## HAZELTON BOILER CO. *vs.* FARGO GAS AND ELECTRIC CO.

Opinion filed November 22, 1894.

### Sale—Warranty Construed.

At a time when the defendant owned and operated a horizontal tabular steam boiler, plaintiff sold defendant an upright steam boiler, and gave the defendant a written warranty, which contained the following language: "We hereby guaranty that the boiler in regular practice, properly managed, shall evaporate ten pounds of water from one pound of good coal at 212 Fahrenheit, which we guaranty to be a saving of at least twenty per cent. in fuel over any horizontal tubular boiler." *Held* (construing the language quoted,) that the last clause, viz: "Which we guaranty to be a saving of at least twenty per cent. in fuel over any horizontal tubular boiler,"—is a definite warranty of the fuel saving capacity of the boiler sold, when compared with the horizontal tabular boiler. Said last clause is legally binding, and is not a mere expression of opinion or "puffing" on the part of the vendor.

### Evidence—Error to Direct Verdict.

Evidence having been introduced tending to show a breach of the fuel saving clause of the warranty, and damages resulting therefrom, it was error to exclude such evidence from the case, and to direct a verdict for the plaintiff, despite the fact that defendant did not claim a breach of that part of the warranty relating to the evaporative capacity of the boiler sold.

### Striking out Portion of Pleading—Error.

*Held*, further, that it was error (for reasons given in the opinion) to strike from the defendant's answer a certain paragraph thereof.

Appeal from District Court, Cass County; *McConnell*, J.

Action by the Hazelton Boiler Company against the Fargo Gas & Electric Company on a contract for the sale of a boiler. Judgment for plaintiff, and defendant appeals.

Reversed.

*W. C. Resser*, (*Seth Newman* of counsel) for appellant.

The defendant offered upon the trial testimony tending to establish all the facts necessary to substantiate the defense of fraudulent representations. The evidence given and offered was sufficient on the question of fraud to warrant the submission of the case to the jury. *Meyer* v. *Salazee*, 24 Pac. Rep. 507; *Derby* v. *Peck. L. R.*, 14 App. Cases, 337; *Litchfield* v. *Hutchinson*, 117

Mass. 195; *Smith* v. *Countryman*, 30 N. Y. 655. If the defense of fraud was imperfectly stated, the defect should have been met by a motion to make more definite and certain and not by a motion to strike out. *Yerkes* v. *Crum*, 2 N. D. 72, 49 N. W. Rep. 422. Parole evidence of fraudulent oral representations as an inducement to the making of a written contract is admissable. 1 Bigelow on Fraud, 175; Addison on Torts, § 1216; Hillard on Torts, 4, 5 and 12; *Antle* v. *Sexton*, 26 N. E. Rep. 691. The contract contains two warranties. The second warranty was "which we guarantee to be a saving of at least 20 per cent. in fuel over any horizontal tubular boiler." Upon its face this clause purports to be an express and positive warranty, and not an expression of opinion, and it must be construed as such. *Chapman* v. *Murch*, 19 Johns. 290; *Towell* v. *Gatewood*, 33 Am. Dec. 437; *Osgood* v. *Lewis*, 18 Am. Dec. 317; *Oneida Mfg. Society* v. *Lawrence*, 4 Cow. 440; *Thrall* v. *Newell*, 19 Vt. 202; *Pinney* v. *Andrews*, 41 Vt. 631. By their acts under the contract, the parties treated the guaranty as a whole, and their conduct and acts are admissable as evidence of the construction which they put upon the warranty. When the terms of a contract are uncertain and its true intent and meaning doubtful, then the practical construction which the parties put upon the contract by their conduct thereunder is of vast importance in ascertaining its true meaning. *Heidenheimer* v. *Cleveland*, 17 S. W. Rep. 524; *Chicago* v. *Sheldon*, 9 Wall. 50; *Topliff* v. *Topliff*, 122 U. S. 121; *District of Columbia* v. *Gallagher*, 124 U. S. 505; *Central Trust Co.* v. *Wabash R. R. Co.*, 34 Fed. Rep. 254; *O'Dea* v. *Winona*, 43 N. W. Rep. 97; *Knox County* v. *Ninth National Bank*, 147 U. S. 91; *Stone* v. *Clark*, 35 Am. Dec. 370; *Emery* v. *Webster*, 66 Am. Dec. 274.

*W. E. Dodge*, for respondent.

The oral negotiations set out in the answer, merged in the written contract, which superceded them, and it was not error to strike these paragraphs from the answer. Section 921, Civil Code. The answer does not set out a defense in the nature of a breach

of warranty. The purchaser of personal property must have relied upon the statements of the seller as to the quality of the article sold, in order to maintain an action for breach of warranty. *Watson* v. *Roode*, 46 N. W. Rep. 491; *Holliday* v. *Briggs*, 15 Neb. 219. Defendant does not declare, nor does it seek to recover upon a breach of warranty in the contract, but upon a subsequent agreement, which it declares was entered into between the parties. It follows "that a warranty given after a sale has been made is void, unless some new consideration be given, for the warranty." Benjamin on Sales, § 611; *Reed* v. *Wood*, 9 Vt. 285; *Vincent* v. *Leland*, 100 Mass. 432; *Conger* v. *Chamberlain*, 14 Wis. 258; *Summers* v. *Vaughn*, 35 Ind. 323.

WALLIN, J. The controlling facts involved in this action are as follows: At and prior to April 17, 1889, defendant was operating a gas and electric plant at the City of Fargo, and had in use in its plant a certain horizontal tubular steam boiler, and, being desirous of adding to the power of its plant, defendant entered into negotiations with the plaintiff for the purchase of a boiler. Considerable correspondence was had between the parties, resulting in a contract of sale. The correspondence was between the secretary of defendant, one Seth Newman, and one C. D. Dennis, who was plaintiff's representative, and the sale contract was signed by them in behalf of the parties. All of the contract of sale which we deem important in our discussion of the case is as follows: "Fargo, D. T. April 17, 1889. The Fargo Gas & Electric Company, Fargo, D. T.—Gentlemen: We propose to furnish you, f. o. b. cars at New York, N. Y., one Hazelton steam boiler of 215 horse power. * * * The horse power of this boiler is based upon the evaporation of thirty pounds of water per horse power from 212 Fahrenheit, with ordinary firing, and we hereby guaranty that the boiler in regular practice, properly managed, shall evaporate ten pounds of water from one pound of good coal at 212 Fahrenheit, which we guaranty to be a saving of at least twenty per cent. in fuel over any horizontal tubular boiler That the boiler shall be well made, of good material, and operate

freely with ordinary care and with all ordinary fuels, and ready to run by June 15, 1889. This boiler shall be furnished as specified for twenty-five hundred and eighty dollars, payable one-half when the boiler shall have been erected and tested, and performing as guarantied, or within sixty days after its arrival in Fargo; one-half in four months, with interest at six per cent. per annum. Should the boiler fail to meet the guaranty, we agree to remove the same at our own expense, or, if you so elect, to accept a sum for the boiler that shall be in proportion to the difference between the work done and the work guarantied." The boiler was delivered under said contract, and one-half of the purchase money was paid. This action is for the balance of the purchase price. The complaint sets out in effect the sale and delivery of the boiler as above stated, and that after the delivery the boiler was fully tried and tested, and was found to perform the work as guarantied, and was then approved and accepted by the defendant, and that defendant has ever since retained and used the boiler, but has neglected and refused to pay the balance of the purchase price as before stated. A copy of the contract is made a part of the complaint. Defendant answered the complaint, admitting the sale and delivery under the contract, and as a defense, by way of recoupment, set out fraud in the sale, and a false warranty, and damages resulting therefrom to the amount of the unpaid purchase money. When the case was called for trial, and before any evidence was offered, the plaintiff moved to strike from the answer "paragraphs five, six, seven, eight, and nine, for the reason that the allegations of fact contained in the paragraphs named set forth an alleged oral agreement and oral reprensentations made prior to the written contract set up in the complaint and admitted in the answer, which written contract, it was claimed, superceded such oral negotiations, and in which the same was merged." The court reserved its ruling, but later in the trial the motion was granted, and said paragraphs of the answer were stricken out. This ruling is assigned as error in this court.

The record shows that the principal contention at the trial turned

upon the proper construction to be put upon the warranty feature of the sale contract. Plaintiff's contention at the trial and in this court is, in effect, that the following words, viz: "Which we guaranty to be a saving of at least twenty per cent. in fuel over any horizontal tubular boiler,"—are not to be regarded as a substantial or binding feature of the warranty, but, on the contrary, should be treated as an expression of opinion, or as mere "puffing," upon the part of the vendor. The defendant's counsel takes the opposite view, and insists that the words quoted should be construed as constituting a vital feature of the contract. The nature of this contention may be well illustrated by extracts from the briefs of counsel. Plaintiff's counsel says, referring to the words above quoted, that they are "not a representation relating to the quality of the boiler itself, but to the quality of all horizontal tubular boilers, concerning which the plaintiff is shown to have no peculiar knowledge or different knowledge from that which the defendant possessed." Defendant's position is briefly stated in the following language, taken from the brief of counsel: "The contract contains two warranties * * * : 'We hereby guaranty that the boiler in regular practice, properly managed, shall evaporate ten pounds of water from one pound of good coal, with feed water at 212 degrees Fahrenheit.' The second warranty was as follows: 'Which [referring to the former warranty quoted] we guaranty to be a saving of at least twenty per cent. in fuel over any horizontal tubular boiler.' Both together, as understood by the parties, being in fact and effect a guaranty of the economic qualities of the Hazelton." Expressed in other language in defendant's brief, defendant argues that "the first warranty quoted is a warranty of work to be done by the boiler. The second warranty is a guaranty of certain beneficial results which shall accrue to the defendant by the performance of such work, and that, construed together, they constitute a warranty of economic qualities in comparison with horizonal tubular boilers." It appears by the evidence that the first installment of

the purchase money was made after the Hazelton boiler had been in operation some two months, and without complaint as to its merits as a boiler. It appears that some time in the fall of 1889 defendant made complaints to plaintiff that the boiler was not working as it was warranted to work. Several letters passed upon the subject, and as a result of the correspondence a number of trial tests of the boiler were had in the years 1889 and 1890, the last of which were had in December, 1890, and January, 1891. All of these trial tests were had at Fargo, in defendant's gas plant. One or more tests were made by the respective parties acting independently, while others, and notably the last, were had under the joint supervision of the representatives of both parties. The most conspicuous, and to us the most significant, feature of the several tests is the fact that the Hazelton boiler was tried in competition with said horizontal tubular boiler, which boiler defendant at the time still had in operation in its plant. The trial tests of the boiler appear to have been made without objection on plaintiff's part, in competition with the horizontal boiler. The tests were made under varying conditions as to fuel, water, temperature, etc., and obvious purpose of them all was to ascertain, and, if possible, to demonstate by experiment, whether or not the Hazelton boiler fulfilled the requirements of the written warranty with respect both to the evaporative and economic qualities of the Hazelton as compared with the horizontal tubular boiler. The evidence shows, and the fact seems to be conceded, that there is no breach of the warranty with respect to the evaporating capacity of the boiler sold. The tests made show that it would, when properly managed, "evaporate ten pounds of water from one pound of good coal at 212 Fahrenheit;" thus fully meeting the requirement of the feature of the warranty last above quoted. The entire contention at the trial, on defendant's part was to show a breach as to that particular clause of the warranty relating to the economic or financial result of the specific work guarantied and which work the Hazelton boiler did, when fairly tested, in fact perform. Defendant, without objection, put in evidence a

good deal of the detail connected with the several competitive trials of the two boilers, and some of the evidence tends strongly to show that the evaporative work performd by the Hazelton boiler, when operated under the best conditions, was not a saving of 20 per cent. in fuel over defendant's horizontal tubular boiler. Defendant claims that, when made under proper and equal conditions, the Hazelton boiler did not do more economical work than the horizontal boiler with which it was operated in competition, despite the fact that under certain partial and unscientific tests it had appeared to do so. Upon this feature of the case all the testimony came from the defendant. Nor does counsel for plaintiff claim in this court that the evidence adduced fails to sustain defendant's contention as to the economic feature of the warranty; his contention being, as already seen, that such feature is not a material part of the warranty, and should therefore be ignored by this court, as it evidently was by the learned trial court. Defendant at the trial repeatedly offered to show by testimony to the effect that none of the representatives or officers of the company who negotiated the purchase of the boiler on defendant's part "had any knowledge of the comparative economic or other value of the different kinds of boilers; that they were in need of additional boiler power in their plant at Fargo, and desired to purchase such as would be most economical in the saving of fuel in doing a given amount of work; and that, at the time of entering into the contract, it was represented by Mr. Dennis, on behalf of the plaintiff, that the boiler [the Hazelton] which was subsequently purchased by said defendant would save at least twenty per cent. in fuel over any horizontal tubular boiler; that, as a matter of fact, the Hazelton boiler purchased by the defendant was valued and priced at nearly, if not quite, double the horizontal tubular boilers of the same capacity; that the sole inducement of the defendant to purchase the boiler was the representation that the said Hazelton boiler would save at least twenty per cent. in fuel over any horizontal tubular boiler; that Mr. Dennis so represented to defendant, and

the defendant so believed from such representations, and made such purchase, at a cost of about double what it would otherwise have expended for the doing of its work, simply by reason thereof." This evidence was objected to upon two grounds: *First*, because not pleaded in the answer; *second*, because all the negotiations leading up to the sale contract were merged in and superseded by the written contract of sale. This objection was sustained, and such evidence was excluded from the jury. Defendant offered to show by the witness Newman, who, as has been stated, was secretary of the defendant, and represented it in negotiating the purchase, that the original draft of the contract of sale was prepared by the plaintiff and submitted to Mr. Newman without containing the clause now in the contract, and which constitutes the bone of contention, viz: "Which we guaranty to be a saving of at least twenty per cent. in fuel over any horizontal tubular boiler." That, when so presented, said Newman, in behalf of the defendant, refused to sign such contract, or buy said boiler, unless said clause guarantying the saving in fuel was inserted. That thereupon said clause was so inserted, and said contract was then executed. This offer was objected to on the ground that it was incompetent and immaterial, and the objection was sustained. Defendant further offered to put in evidence certain letters written in plaintiff's behalf during the negotiations for the sale, wherein the statement was made and emphasized that the Hazelton boiler was in its practical operation an exceptional fuel saver, and that said boiler would be in its use very much more economical as a fuel saver than any horizontal tubular boiler would be. This evidence was excluded upon the same ground. Defendant also offered to show that the first installment of the purchase money was made with reference to the 60 days clause of the contract, and was made after the boiler was in use, but before it had been tested as to its evaporative or fuel saving capacity. This evidence was excluded as incompetent and immaterial. At the close of the evidence, defendant's counsel requested the court to instruct the jury fully as to the

meaning and effect of the language used in the sale contract. It will be unnecessary to set out defendant's requests in their entirety. It will suffice to say that the trial court was requested, among other instructions, to charge the jury as follows: "That part of the contract which provides that the boiler, in regular practice, properly managed, shall evaporate ten pounds of water from one pound of coal, with feed water at 212 degrees Fahrenheit,' is a guaranty of the work which the boiler should do; and that part of the contract which provides 'which we guaranty to be saving of at least twenty per cent. in fuel over any horizontal tubular boiler' is a guaranty of the result of that work in the saving of fuel when compared with the work done by any tubular boiler." The court refused to charge the jury as requested. The plaintiff by its counsel then moved the court "to direct the jury to return a verdict for the plaintiff for the amount claimed in the complaint, upon the ground that there is no evidence on the part of the defense proving, or tending to prove,—and no allegations in the answer under which said proof could be admitted,—the existence of any warranty in the contract between the parties for the breach of which the defendant is entitled to damages and recoupment as a modification of the consideration named in the original contract." Which motion was granted, and, pursuant thereto, the verdict was returned for the plaintiff. All of the rulings and instructions given to the jury to which reference has been made were excepted to by the defendant, and such rulings, including the refusal to give the instructions requested by the defendant, are assigned as error.

The record has been sufficiently reviewed to explain the essential nature of the controversy which prevailed at the trial, and which, in one form or another, came up for discussion at almost every stage of the trial. It abundantly appears in the rulings of the learned trial court that the construction placed upon the warranty feature of the sale contract by the counsel for the plaintiff was adopted in its entirety by the court below; and that all of its rulings upon the admission of testimony and upon requests for

instructions asked for by the defendants counsel, as well as the final instruction to return a verdict for the plaintiff, are in harmony with and result from the adoption of the plaintiff's construction of the warranty. As we have reached the conclusion that the plaintiff's construction of the warranty is fallacious, we shall accordingly hold that the rulings below which are in consonance with such views were erroneous. Assuming them to be erroneous, it is obvious that they were highly prejudicial to the rights of the defendant.. What is the proper construction of the language employed in the warranty? is the crucial question in the record. When analyzed, the terms of the warranty are found to consist of two parts or clauses. The first has reference only to the evaporative capacity of the Hazelton boiler, without any reference to or comparison with any other boiler. It is an explicit representation and warranty on the part of the vendor that the boiler sold, "in regular practice, properly managed, shall evaporate ten pounds of water from one pound of good coal at 212 Fahrenheit." The meaning of this clause is clear, and has not been questioned, and it appears, also, that the defendant does not claim that this branch of the warranty has been broken. It is plaintiff's contention, however,—and, as has been said, this view was adopted by the trial court,—that the clause of the warranty above quoted constitutes the whole of the warranty which is legally operative or binding upon the plaintiff, and that the remaining clause is, in legal contemplation a mere harmless expression of opinion on the part of the vendor, or what is sometimes denominated "puffing." The remaining clause of the warranty reads: "Which we guaranty to be a saving of at least twenty per cent. in fuel over any horizontal tubular boiler." This clause is the occasion of the controversy. Defendant insists that its meaning is plain, and that it is a binding and operative feature of the contract. The evidence shows that at and prior to the sale the defendant owned a horizontal tubular boiler which was in use in defendant's plant, and defendant claims that the clause we are discussing was placed in the sale contract purposely, and with the

obvious intention to represent and warrant that the Hazelton boiler, would when in operation so operate and work as to be a saving in fuel of at least 20 per cent. "over any horizontal tubular boiler," including, of course, the horizontal tubular boiler then in use in defendant's plant. We think defendant's interpretation of this clause is correct. The words are few and simple, and convey, to our minds at least, an explicit declaration as to the fuel saving capacity of the Hazelton boiler as compared with the horizontal boiler. The second clause of the warranty seems to us to be a very natural addition to the first clause, with which it is closely connected. True, the first clause, standing alone, embodies a clean cut statement of fact; and it may well be true, also, that the first clause alone, if used in a transaction between boiler experts, would be adequate to convey a clear and explicit idea relative to the fuel saving capacity of the boiler under consideration; but we think that the first clause alone would not convey to the mind of the nonexpert or average business man any idea whatever of financial or practical value. Certainly, the first clause contains no explicit statement as to the fuel-saving qualities of the Hazelton boiler. We think the second clause of the warranty was inserted to supplement the first, and to convey a distinct and explicit representation as to the comparative fuel saving qualities of the two kinds of boilers. Assuming the correctness of our interpretation of the language used in the sale contract, it follows that defendant had a right to show at the trial, if able to do so, that there had been a breach of the warranty in the matter of the comparative fuel saving qualities of the boilers, and was entitled to have the jury (in estimating the damages) pass upon that feature as a question of fact. As has been seen, defendant introduced evidence, without objection, tending to show a breach of this part of the warrant, and the damages resulting therefrom. We think such evidence was properly admitted, and that the case should have been submitted to the jury, with proper instructions, including the instructions requested by defendant's counsel, and that to refuse to do so was prejudicial error in the trial court.

We do not think that the sale contract is so ambiguous or obscure in its language or meaning that it became absolutely necessary at the trial to introduce evidence (as defendant unsuccessfully and repeatedly offered to do) tending to show the facts and circumstances leading up to the sale, and the execution of the contract, for the purpose of showing the sense in which the words employed in the warranty were used. But, on the other hand, we are of the opinion that in view of the developments at the trial, and from the standpoint of the plaintiff's counsel, and rulings of the court below, it was manifest error to exclude such evidence. If the fuel saving clause of the contract was of doubtful or ambiguous meaning, then (under a well settled rule of construction) it was proper to search for its true meaning in the light of the extraneous facts and circumstances. This rule is voiced by the Code. Section 3562 reads: "A contract may be explained by reference to the circumstances under which is was made and the matter to which it relates." Section 3564 reads: "If the terms of a promise are in any respect ambiguous or uncertain it must be interpreted in the sense in which the promisor believed at the time of making it that the promisee understood it." At the trial, counsel were at loggerheads as to the meaning of the fuel saving clause of the contract, defendant's counsel contending that the clause had a plain and definite meaning, while plaintiff's counsel disputed this, and insisted upon an entirely different interpretation. The learned trial court seemed to have agreed with the plaintiff's interpretation. Under these circumstances we think it was error, from the standpoint of the court below, to exclude from the case .the evidence, both oral and written, tending as it would have done, not to vary or contradict the writing, but to throw light upon the meaning of the fuel saving clause and upon the sense in which that language was understood by both parties.

As we have determined to grant a new trial, at which the pleadings may be amended so as to simplify the issues, we do not consider it necessary to rule upon the error assigned upon the

order of the trial court striking out five paragraphs of the answer, further than to say that it was clearly error to strike out the ninth paragraph of the answer, for the reasons assigned in the motion to strike out. Paragraph 9, in effect, set out a breach of the warranty with respect to both the evaporative and fuel saving qualities of the boiler in question. It was a breach of the warranty and the resultant damages that constituted the grounds of the defense, and hence they should not have been stricken out of the answer.

The judgment will be reversed, and a new trial granted. All concur.