(106 N. W. 36.)

---

JAMES E. WISNER, CLARENCE B. WISNER, GENEVIEVE A. WISNER AND ANDREW SANDAGER, AS ADMINISTRATOR OF THE ESTATE OF LAURA N. WISNER, DECEASED, v. MARY C. FIELD, WILLIAM H. FIELD, RICHARD CARPENTER AND BENJAMIN F. ELLIOTT.

Opinion filed Deceember 21, 1905.

### Contract — Construction — Intent of Parties Thereto.

1. Courts of equity will not be controlled by the name given to a transaction or document by the parties, but will scrutinize the transaction or document and the contract of the parties in reference thereto, to ascertain what the parties intended it to be.

### Same — Mortgages — Collateral Security.

2. The fact that a deed is referred to as collateral security will not conclusively stamp the transaction as a security transaction.

### Contract for Sale of Land — Abandonment.

3. A written contract for the sale of land may be waived or abandoned by the vendee by parol.

### Vendor and Purchaser — Abandonment of Contract.

4. Evidence considered and *held* to show an abandonment of a contract by express terms, followed by more than ten years of silence concerning the same.

### Appeal — Costs — Unnecessary Record.

5. Where a party causes unnecessary parts of the record to be printed, the Supreme Court will, on motion, make a special order in regard to the payment of the costs of such printing.

Appeal from District Court, LaMoure county; *Glaspell, J.*

Action by James E. Wisner and others against Mary C. Field and others. Judgment for defendants, and plaintiffs appeal.
Modified.

*Pierce & Tenneson,* for appellant.

The form of transfer makes no difference in its legal effect if security is intended. Carr v. Carr, 52 N. Y. 251, 258; Stoddard v.

Whiting, 46 N. Y. 627; section 4701, Rev. Codes 1899; Hodgkins v. Wright, 60 Pac. 431; Genet v. Davenport, 56 N. Y. 676; Fisk v. Stewart, 24 Minn. 97.

Once a mortgage always a mortgage. Carr v. Carr, supra; Marshall v. Thompson et al., 39 N. W. 309; Murray v. Walker, 31 N. Y. 399; Horn v. Keteltas, 46 N. Y. 605.

The court scrutinizes with great jealousy the acquisition of the equity of redemption by the mortgagee. Marshall v. Thompson, supra; Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 369.

Without such foreclosure, a conveyance from the mortgagor to the mortgagee is necessary to wipe out such interest. Shattuck v. Bascom, 105 N. Y. 43, 12 N. E. 283; Jackson v. Lodge, 36 Cal. 28; Raynor v. Drew, 13 Pac. 866; Niggeler v. Maurin, supra.

*Rourke & Kvello,* and *C. W. Davis,* for respondents.

It is the character, not the name of a transaction that determines what it is. Heady v. Bexar Building & Loan Ass'n., 26 S. W. 468.

Vendee is not entitled to possession of land contracted to be sold without express stipulation to that effect. Williams v. Forbes, 47 Ill. 148; Burnett v. Caldwell, 76 U. S. 290, 19 L. Ed. 712; Irwin v. Olmstead, 9 N. Y. Common Law, 106; Suffern v. Townsend, 4 N. Y. Common Law, 658; Holmes v. Schofield, 29 Am. Dec. 364; Twyman v. Hawley, 24 Gratt. 514, 18 Am. Rep. 661; Kratemayer v. Brink, 17 Ind. 509; Northwestern Iron Co. v. Meade, 21 Wis. 480; Sedgwick & Waite, Trial of Title to Land, section 304.

A delay of from one to three years in tendering the purchase money and demanding a conveyance by the vendee from the vendor will be regarded as an abandonment of the contract, and courts will refuse to decree a specific performance, especially where the land has risen in value. Requa et al. v. Snow, 18 Pac. 862; Simpson v. Atkinson et al., 39 N. W. 323; Smith et al. v. Glover, 52 N. W. 210, affirmed 52 N. W. 912; Miner v. Boynton et al., 89 N. W. 336; Mahon v. Leech, 11 N. D. 181, 90 N. W. 807; Pomeroy Specific Performance (2d Ed., 1897), section 412.

A clause in a note reciting that lands are held as collateral security is not a mortgage nor in the nature of a mortgage. Rogers v. James, 35 Ark. 77. Nor an agreement to purchase. Green v. Cook, 29 Ill. 186.

Neither a surety nor an assignee of a mortgage have any redeemable interest in the mortgaged premises. Anderson v. Olin, 34 N. E. 55; Miller v. Ayers et al., 13 N. W. 436; section 5854, Rev. Codes 1899.

Morgan, C. J. This action involves the right of the title and possession of section 25, township 134, range 59, LaMoure county, N. D. The facts which control the decision of the case are the following: In the year 1882 James E. Wisner, one of the plaintiffs, was the owner of said section of land, and on August 26th of that year conveyed the same to J. O. Perkins, who gave him a purchase money mortgage for the balance due, amounting to $3,200. In October, 1883, this mortgage was assigned by Wisner to Mary C. Field, at the request of the defendant W. H. Field, her husband and agent, for the sum of $3,200 and accrued interest. The notes were indorsed by Wisner, and their payment guaranteed by him. On July 14, 1885, Perkins having failed to meet his payments, the mortgaged premises were sold under the foreclosure of the mortgage, and bid in by Wisner in Mrs. Field's name, at Field's request, for the full amount due on the notes. In December, 1886, a sheriff's deed of said section 25 was issued and delivered to Mary C. Field, and she thereby became the absolute owner thereof by virtue of such foreclosure sale, unless Wisner became entitled to an equitable ownership or interest therein by virtue of transactions between him and W. H. Field, between the time of the foreclosure sale and the delivery of the sheriff's deed to Mary C. Field. For many years, since 1882, James E. Wisner and W. H. Field were jointly interested in real estate transactions in North Dakota, and from that time until about 1900 Wisner was Field's agent, caring for such real estate, and in making collections on sales thereof. They were friends, and their relations were intimate; each one having confidence in and trusting the other in their business dealings. The Fields resided in Port Chester, N. Y., and the Wisners in Lisbon, N. D. On July 27, 1885, Wisner wrote Field: "I inclose papers in J. O. Perkins mortgage. I attended the sale and made the bid in the interest of M. C. Field and paid all bills. * * * . Please send me a statement of the interest on the Perkins matter and I will send same. I would send the whole principal, but I have used perhaps $20,000 or more in R. R. matters which has provided a way for loose money. * * * I will make a clean deed to one or two sections of land, and you may give me a writ-

ing  *  *  *  that, when you have been paid, you will deed the same back to me.  *  *  *  You will see that this mortgage was foreclosed more than two weeks since." Field answered this letter, and stated that the accrued interest on the Perkins mortgage was $596. The interest was computed up to August 15, 1885, five days later than the date of the letter. He further said: "For the principal, if you choose, you can draw a note payable to the order of M. C. Field for the amount of $3,200, at 8 per cent, and mark on the margin of the note that 'a deed for section 25, in township 134, range 59, is held as collateral security.' This will on the face of it show that the collateral (a deed for the section) must be returned to you or your heirs when the note is paid. This is the same as if a note is given with a railroad or government bond to a bank for security. In such cases the bond must always be returned when the note is paid. It is a simple and perfectly safe way of doing." On September 7, 1885, Wisner sent Field the interest on the Perkins mortgage, and said: "You make out a note in proper shape for the Perkins mortgage." On September 21st Field acknowledged receipt of the interest money, and said: "Inclosed you will find note drawn up ready for your signature. I have made the interest 7 per cent instead of 8, and, whenever you are paying off any of your notes, I will be ready to receive the money, as I have so many enterprises under way that require money that it is not the inducement to me to loan money that it is to some." The inclosed note was in the following form: "$3,200. Lisbon, Dakota Territory, Sept. 1, 1885. One year after date I promise to pay to the order of M. C. Field, three thousand two hundred dollars, with interest at seven per cent, payable at the Bank of Lisbon." The note was signed by Wisner and below his signature was the following: "A deed for Sec. 25 in township 134, range 59 is held by M. C. Field as collateral security for the payment of this note. A deed of this section will be delivered on payment of the note." The note was immediately returned by Wisner to Field. Wisner paid the interest on this note each year for four years, including the year 1889. On behalf of the plaintiff it is contended that the relation of mortgagor and mortgagee was created between Wisner and Field by this note and the correspondence in reference thereto. He brings an action for an accounting, and seeks to compel a conveyance to him of said section 25. The trial court refused to grant him any relief, and dismissed

his action. He has appealed, and asks a review of the entire case in this court.

In the first place it is perfectly apparent that Wisner retained no interest in the land when he sold to Perkins. His conveyance to Perkins was a warranty deed absolute in form. It is also true that Wisner retained no interest in the Perkins mortgage when he assigned it to Mrs. Field. The assignment was absolute in form, unaccompanied by oral or written conditions. It is true that Wisner guaranteed the payment of the note, and indorsed it, but the contention that the Perkins mortgage was assigned as security for the money advanced, being the face thereof with accrued interest, cannot be sustained. Field denies that there was such an agreement. The assignment papers are absolute in form. In the first proposition concerning the transfer, made in a letter to Field by Wisner on October 27, 1883, Wisner says: "I have a mortgage of $3,200 payable in five years from September, 1882, at 10 per cent. * * * This is perfect security, and I will guaranty the same, and let you have it for its face, $3,200 and accrued interest. * * * If any of your friends want a good investment, this is solid." Field answered this letter, and unconditionally accepted the offer, and said that he would take the mortgage. Wisner then sent the note and mortgage to Field, who acknowledged receipt thereof and said: "Your letter inclosing the Perkins mortgage for $3,200 is at hand and in payment for which I inclose you draft on New York. * * * When you have any more such paper, I will try and find a place for it, if you wish to dispose of it." We have no hesitation in concluding that Wisner assigned the mortgage absolutely, and not as security. The trial court so found, and the finding is amply sustained. In fact an opposite finding could not be sustained under the evidence. At the time the land was bid in by Wisner for Mrs. Field, Wisner had no equity or any interest whatsoever in the foreclosed premises. Starting with that proposition as undisputable, it remains to be determined whether he acquired any interest in that land subsequently. In other words, what is the effect of the note of September 1, 1885, known in the record as "Exhibit O," upon Wisner's relation or right to this land when considered in connection with the prior and subsequent correspondence of the parties relating thereto? On the appellant's part it is insisted that the sheriff's deed is a mortgage. On respondents' part it is claimed that Wisner was never entitled to

a conveyance of the land to him, except upon payment of Exhibit O and interest thereon in full. He claims that Exhibit O is merely a conditional sale of the land, or a contract for the sale of the land upon payment of Exhibit O, and that Wisner had no lien under Exhibit O which he could not waive, and which contract he asserts was waived and abandoned by him by express writing and by his conduct, continued for eleven years.

To determine what rights were granted to Wisner by the indorsement on Exhibit O, the prior, contemporaneous, and subsequent conduct and declarations of the parties become material as supplementing the indefinite and incomplete provisions of the memorandum. In Exhibit O are used the words "as collateral security." Appellant contends that these words stamp the transaction as conclusively a mortgage or security transaction. The intention of the parties is not to be gathered alone from what the parties denominate a transaction or document. All communications between them will be scrutinized to determine the character of the transaction or conveyance and the intention of the parties. Heady v. Baxar B. & L. Ass'n (Tex. Civ. App.) 26 S. W. 468; Rogers v. James, 33 Ark. 77. Preliminary to the execution of Exhibit O Wisner had written the letter of July 27, 1885, to Field. This letter called for a statement of interest due on the Perkins mortgage. This mortgage had just been foreclosed and the land bid in by Wisner for Mrs. Field at Field's request. Upon ascertaining what the interest was Wisner paid it, and explained why he did not pay the whole amount of the mortgage. It is claimed that the payment of this interest gave Wisner an equitable interest in this land amounting to an equitable mortgage or lien. The evidence does not show that it was paid on the mortgage debt on the theory that he considered the $3,200 to have been advanced by Field as a loan. The letter of July 25th is not sufficient to stamp Exhibit O as a security transaction. The parties had not made any agreement that the sheriff's certificate should be held by Mrs. Field as security or in trust for Wisner. It is true that at that time Field would have deeded this land to Wisner upon full payment of the $3,200 note and interest. This was not on the theory, however, of any obligation on his part to do so, but because he had use for the money in his business enterprises. He stated this in his letter acknowledging receipt of the interest on the Perkins mortgage and sending Exhibit O to Wisner. At

that time the land was not valuable, and could not have been sold for enough to pay the mortgage in cash. This willingness to accept the money at that time accounts for some expressions in the letters from which appellants argue that the transaction was a loan and that the sheriff's certificate was a mortgage. We cannot sustain that contention. From all the evidence we conclude that Exhibit O is not a mortgage. It was an indefinite agreement to sell to Wisner when the note was fully paid. The fact that the deed is stated in Exhibit O to be held as collateral security is in law a misstatement. The deed was not Wisner's deed at all. It was Field's land unqualifiedly after the sheriff's deed was issued, and before that it was Perkin's land. Wisner never had the title after selling it to Perkins, nor any equitable interest therein. He therefore had no interest to put up or pledge as collateral security. In pledging property as collateral security the property remains in the debtor. The creditor has a right to hold it until payment of the debt. In cases of default the creditor can dispose. of the security. Butler v. Rockwell, 14 Colo. 125, 23 Pac. 462. In this case what interest had Wisner in the land at this time? Payment of interest on the note could give him no equity in the land, unless there was an agreement to that effect at least. The payment must have been made either as a fulfillment of the guaranty or in contemplation of a final purchase of the land. In neither case would that give him an equity in the land which could not be waived or abandoned.

Construing Exhibit O as granting Wisner the right to purchase the land for a price fixed by the sum total of the indebtedness represented by the $3,200 note, we find that the note has never been paid, and that Wisner subsequently relinquished all right to the land and wholly abandoned the contract. He paid the interest on the note to 1889, and thereafter made no further payments. On March 11, 1891, he wrote Field, among other things, as follows: Your title.is perfect to * * * section 25-134-59. If you can afford to deed to me the Jo Anderson land, 240 acres, all right. If not, it is all right. I will release all my rights in all these lands. It is the best I can do." This letter is an express waiver of any claim under Exhibit O. He makes an appeal for reimbursement out of the 240-acre tract, but relinquishes all right to purchase section 25 in any event. Thereafter Wisner made no claim to the land, nor to rights under Exhibit O, until January 23, 1902, when

Mrs. Wisner wrote to Mrs. Field that Wisner had assigned to her his equity in section 25 on June 20, 1889, and asking for a statement of "your $3,200 note secured on said section 25." Long before the receipt of this letter from Mrs. Wisner, and soon after the receipt of the letter of March 11, 1891, Wisner, acting as agent for Field, had disposed of seperate tracts of section 25 to various parties, who had taken possession thereof and become obligated to pay for the same. In none of these sales by Wisner, as agent, did he inform any of the purchasers that he claimed an equity in this land. Between March 11, 1891, and January 23, 1902, the land had largely increased in value. Wisner had done nothing during all this time showing that he contemplated claiming the land. He had been financially iresponsible and heavily in debt since 1889. During all this time Field has paid the taxes, except when paid by purchasers. Wisner has done nothing to claim the land nor an interest therein, nor to pay the taxes nor to pay Exhibit O, since 1889.

In view of these undisputed facts we are convinced that the following conclusions are sustained by the evidence: (1) That the assignment of the Perkins mortgage was absolute and without any reservation. (2) That Exhibit O was a permission to Wisner to demand a deed upon payment of the indebtedness or purchase price represented by Exhibit O. (3) That the right to purchase section 25 upon payment of Exhibit O was expressly abandoned and waived by Wisner on March 11, 1891, and the contract thereafter wholly abandoned; and relying on such abandonment Field has disposed of some of the land to innocent purchasers. To compel a specific performance of the contract at this late day, or, if performance cannot be compelled, to assess damages, would be inequitable and unjust, and would be granting relief in a court of equity when the plaintiff has expressly waived all rights thereto. That a contract for the sale of real estate may be abandoned by the vendee by parol has been recently held by this court. Mahon v. Leech, 11 N. D. 181, 90 N. W. 807; Wadge v. Kittleson, 12 N. D. 452, 97 N. W. 856. In the first of these cases the authorities are collected, and they show that this principle of law is well sustained. These cases are therefore decisive of this case.

The rules of the Supreme Court provide that the court will make an order in regard to costs of printing the abstract when either party has caused unnecessary parts of the record to be printed.

Rule 15. 75 N. W. x. Appellant filed a motion under that rule, and specified what parts of the record the respondents caused him unnecessarily to print. The printed abstract contains 481 pages. We are satisfied from an examination of the same that a vast amount of unnecessary printing was required to be done on the demand of the respondents. Matters not in issue, and not referred to in argument or brief, were included and were unnecessary. The appellant should not be compelled to bear this burden unnecessarily. For this reason no costs or disbursements will be allowed to the respondents in either court. The expense of this unnecessary printing is approximately equal to defendants' taxable costs in both courts.

The judgment of the district court is modified to that extent, and, as modified, is affirmed. All concur.