J. D. HALSTEAD, Appellant, v. MISSOURI SLOPE LAND & INVESTMENT COMPANY, a corporation, and A. L. MARTIN, and MARY J. McGILLIVRAY, Respondents.

(184 N. W. 284.)

**Damages — contract construed as agreement for rental, contingent on determination of ownership, and not one for penalty.**

In this action two parties, H. and M., were asserting conflicting claims of ownership to a certain tract of land. During the pendency of litigation involving such claims, H., the one in possession, surrendered possession to M. pursuant to a written agreement, signed by M. and two sureties, wherein it was agreed that "in case the court shall decree the return of said land" to H., "they will return the same to him together with $500 per year as damages for the use and occupancy of the said premises." For reasons stated in the opinion it is *held* that, under the evidence in this case, the agreement between the parties was one for the payment of a rental, fixed by them, contingent upon the determination of the ownership of the premises; and not one for the payment of a penalty, or one whereby "the amount of damages to be paid or other compensation to be made for a breach of an obligation, is determined in anticipation thereof."

Opinion filed June 27, 1921. Rehearing denied September 10, 1921.

From a judgment of the District Court, Golden Valley County. *Hanley*, J. Plaintiff appeals.

Reversed.

Per Curiam Opinion.

*H. L. Halliday,* and *J. A. Miller,* for appellant.

"The term 'liquidated damages' is used in reference to the breach of a contract or non-performance of duty as expressing a fixed sum which is agreed upon between the parties as the ascertained damage which one is to receive and the other pay because of default." U. S. v. U. S. Fidelity etc. Co. 151 Fed. 534, (14 C. J. 714).

"The distinction between a penalty and a provision for liquidated damages is that a penalty is in effect a security for performance, while a provision for liquidated damages is for a sum to be paid in lieu of performance." 14 C. J. 933.

"A contract for a penalty is an agreement to pay a stipulated sum in case of default intended to coerce performance, to punish default, or to secure payment of actual damages." Muehlebach v. Missouri etc. Ry. Co. (Mo.) 148 S. W. 453.

In the following cases the courts have defined what contracts are void as providing penalties or liquidated damages. DeGraff, Vrieling & Co. v. Wickham, 52 N. W. 503; Crawford v. Heatwole (Va.) 34 L. R. A. (N. S.) 587 and note; Eadler v. Silverstone (Wash.) 34 L. R. A. (N. S.) 4 and note; Bilz v. Powell (Col.) 38 L. R. A. (N. S.) 847 and note; Barnes v. Clement (S. D.) 66 N. W. 810.

*W. H. Stutsman,* for respondents.

Section 7166 prescribes that the detriment caused by the wrongful occupation of real property is deemed to be the value of the use of the property for the time of such occupation, not exceeding six years last preceding the commencement of the action, and costs, if any, of recovering the possession and therefore any attempt to stipulate the damages for the wrongful occupation of land must be void. Utley v. Dunning, 161 N. W. 813, and Barnes v. Clement, 66 N. W. 810. (South Dakota cases).

PER CURIAM. This is an action to recover on a written agreement in the form of a bond executed by the defendant, Missouri Slope Land & Investment Company, as principals and the defendants, A. L. Martin and Mary J. McGillivray, as sureties. The written instrument upon which this action is brought was executed under the following circumstances:

About the year 1906 the defendant Missouri Slope Land

& Investment Company, instituted an action against J. D. Halstead to quiet title to and recover possession of a quarter section of land situated in what is now Golden Valley county, in this state. Said Halstead defended such action, and claimed to have purchased the land under a contract from the Missouri Slope Land & Investment Company, and asserted that he was entitled to occupy said premises and to have the same conveyed to him upon payment of the sum due on the contract. The Missouri Slope Land & Investment Company denied the validity of the contract. Halstead was in possession of the land. A trial of the action resulted in a judgment in favor of the Missouri Slope Land & Investment Company and against Halstead; said judgment being entered February 3, 1909. 27 N. D. 596, 147 N. W. 643. Thereafter said Halstead proceeded to take proper steps to move for a new trial. Such motion was made and granted on January 14, 1911. 27 N. D. 597, 147 N. W. 643. An appeal to this court resulted in an affirmance of the order granting a new trial. 27 N. D. 591, 147 N. W. 643. On a retrial of the action Halstead prevailed. The Missouri Slope Land & Investment Company appealed to this court, but it subsequently attempted to withdraw the appeal, with the result that this court ordered the appeal to be dismissed, and the judgment of the trial court then became final.

The written instrument which is involved in this controversy was executed during the time when Halstead was taking steps looking toward moving for a new trial, to-wit: on June 6, 1910, and is in words and figures as follows:

"State of North Dakota, County of Billings.

"In District Court, Tenth Judicial District.

"Missouri Slope Land & Investment Company, a Corporation, Plaintiff,
    v. J. D. Halstead, Defendant.

*"Undertaking*

"Know all men by these presents, that the Missouri Slope Land & Investment Company, a corporation, as principal, and A: L. Martin and Mary J. McGillivray, as sureties, of Dickinson, N. D., are firmly bound unto J. D. Halstead in the sum of five thousand five hundred dollars ($5,500.00), lawful money of the United States of America, to be paid to the said J. D. Halstead, his executors, administrators, or assigns, for the payment of which, well and truly to be made, we bind ourselves, our

executors and administrators, successors and assignees, firmly by these presents. Sealed with our seals, and dated this 6th day of June, A. D. 1910.

"The condition of the above obligation is such that whereas, the plaintiff is in possession of the northwest quarter (N. W. 1/4) of section eleven (S. 11), in township one hundred thirty-nine (T. 139) north, of range one hundred six (R. 106) west of the 5th P. M., Billings county, North Dakota, under an execution issued in the above entitled case; and whereas, defendant above named, J. D. Halstead, has secured an order from the court above entitled to show cause why a stay of execution should not be granted in the above entitled action; and whereas, the defendant feels aggrieved and desires to take further action in the above-entitled case:

"Now, therefore, the above-named sureties hereby undertake and agree that the plaintiff, Missouri Slope Land & Investment Company, in case the court should decree the return of said land above described, they will return the same to the defendant herein named, together with five hundred dollars ($500) per year as damages for the use and occupancy of the northwest quarter (N. W. 1/4) of section eleven (S. 11) in township one hundred thirty-nine (T. 139) north, of range one hundred six (R. 106) west of the 5th P. M., Billings county, North Dakota, by the plaintiff herein.

"Now, if the plaintiff should do as hereinbefore set out, then this bond to be null and void; otherwise, to be in full force and effect. Missouri Slope Land & Investment Company, by H. A. Hunter, its Secretary and Treasurer. (Cor. Seal.) A. L. Martin, Mary J. McGillivray.

"In Presence of: J. E. Davidson, E. C. Goodman."

It is undisputed that at, and prior to, the time this bond was executed and delivered, Halstead was in possession of the premises. It is also undisputed that upon the execution of such bond and in reliance thereon he delivered possession of the premises to the Missouri Slope Land & Investment Company, and that its agent entered into possession thereof and occupied the same from on or about June 6, 1910, until March, 1917, at which time Halstead was put in possession by virtue of an execution. Thereafter Halstead made demand for the payment to him of the amount stipulated in the written agreement. No payment was made, and he thereupon brought this action to enforce the bond. The three defendants answered separately, admitting the execution of the

bond, and alleging that the same was without consideration. At the close of the trial both parties moved for directed verdicts. The trial·court thereupon dismissed the jury, and rendered judgment in favor of the defendants.

The sole question presented on this appeal is whether the trial court was correct in ordering judgment in favor of the defendants. A determination of that question involves a consideration of, and is controlled by, a construction of the instrument in suit. Our statute provides:

"Every contract by which the amount of damages to be paid or other compensation to be made for a breach of an obligation is determined in anticipation thereof is to that extent void." § 5925, C. L. 1913.

"Parties to a contract may agree therein upon the amount which shall be presumed to be the amount of damages sustained by a breach thereof, when from the nature of the case it would be impracticable or extremely difficult to fix the actual damages." § 5926, C. L. 1913.

Questions similar to the one here presented have frequently been before the courts, and have given them much trouble. No good purpose would be subserved by analyzing the different adjudicated cases, for as has been well said:

"No definite rule to determine the question is furnished by them, each being determined more in direct reference to its own facts than to any general rule." Streeper v. Williams, 48 Pa. 450.

In the earlier cases the courts gave more weight to the language of the clause designating the sum to be paid. The modern authorities attach greater importance to the meaning and intention of the parties. Sutherland on Damages (4th ed.) § 293, p. 907. No form of words has been regarded as controlling.

"But the fundamental rule, so often announced, is that the construction of these stipulations depends, in each case, upon the intent of the parties as evidenced by the entire agreement construed in the light of the circumstances under which it was made."· Kemp v. Knickerbocker Ice Co., 69 N. Y. 45.

Thus, in Streeper v. Williams, supra, the Supreme Court of Pennsylvania held that the word "forfeit," in a certain instrument there in suit, was outweighed by the applicable rules of interpretation and meant "to pay." Our statute provides:

"All contracts, whether public or private, are to be interpreted by the

same rules, except as otherwise provided by this Code." § 5895, C. L. 1913.

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful." § 5896, C. L. 1913.

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties." § 5903, C. L. 1913.

"A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." § 5907, C. L. 1913.

"Particular clauses of a contract are subordinate to its general intent." § 5910, C. L. 1913.

From the evidence it appears that the bond in suit was drawn up as the result of a conference had between the parties and their respective attorneys. It was first suggested that the bond provide that the land company pay a reasonable rental value of the land, in event it was defeated, without naming the sum of such rental. Halstead objected to this, and wanted "a stated sum" named. When, during the course of this trial, he was asked by his counsel if there was "any discussion at that time what would be the reasonable value of the use of the premises." Counsel for the defendants objected, on the ground that this "would tend to vary the terms of a written instrument," and this objection was sustained. There is not the slightest evidence tending to show that the sum stated, viz. $500, was in excess of the reasonable rental value of the premises. There can be no question but that the owner of a tract of land has the right to contract with another with reference to the occupancy thereof, and to agree upon the rental to be paid for such occupancy. Nor is there any reason why two parties, asserting conflicting claims of ownership to a tract of land, may not contract, either with a third party or with one another, with regard to such occupancy and the rental to be paid, and leave the ownership of the rents contingent upon the adjudication of the right of ownership; that is, they may contract that a certain rental shall be paid to whoever is eventually determined to be the owner. And as we construe the contract, under the evidence before us in this case, that is precisely what the parties here did; that is, upon the record before us, we are of the opinion that the parties did not attempt to provide for a penalty, or for stipulated damages, but that they agreed upon the value

8

of the "use and occupancy" of the premises—that is, upon what would be a fair rental to be paid to the owner of the premises, when the question of ownership was determined.

The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion. Appellant will recover costs on this appeal.

BIRDZELL, CHRISTIANSON, BRONSON, and GRACE, JJ., concur.

ROBINSON, C. J. (concurring in part). We all agree that the owner of land may lease it, and that it was competent for the plaintiff to lease his quarter section of land to the Missouri Company at an agreed price; but the bond in question is not a lease. There was no lease of the land for a month, a year, or for any time. The Missouri Company did not hold possession as a lessee, for a lessee is never subject to be dispossessed in a moment in the way the Missouri Company was dispossessed. When the bond was made, the parties were in court disputing the right to the title and possession of the land. The Missouri Company had a right to hold possession on giving a bond to pay the value of the use and occupation. Comp. Laws, § 7828. The bond in question may well be sustained, if considered as an agreement to pay the value of the use and occupation, not exceeding $500 a year. But if the bond is construed as an agreement to pay $500 a year as damages for the withholding of the land not leased to it, then it is an agreement to pay a compensation for the breach of an obligation, and is to that extent void. Comp. Laws, § 5925.

The case should be remanded for a new trial, with directions to give judgment for the value of the use and occupation of the land, regardless of the amount named in the bond.