**Lloyd J. BERRY, doing business as Berry Realty, Plaintiff and Respondent,**

**v.**

**Ralph HEINZ, and Theresa Heinz, Defendants and Appellants.**

**No. 8171.**

Supreme Court of North Dakota.

Dec. 23, 1965.

Thorsen & Thorsen, Grand Forks, for defendants and appellants.

Stokes, Vaaler, Gillig & Warcup, Grand Forks, for plaintiff and respondent.

TEIGEN, Judge.

This is a suit to recover a real estate broker's commission the plaintiff claims is due under a listing contract with the defendants. After both parties had rested, each moved for a directed verdict and objected to the other's motion. The trial judge granted the plaintiff's motion and denied defendants' motion. Judgment was entered for the plaintiff and this appeal is taken from the judgment.

The plaintiff, Lloyd J. Berry, doing business as Berry Realty, is a real estate broker having his principal place of business at Royalton, Minnesota, with branch offices at Brainerd and Minneapolis, Minnesota. The defendants, Ralph and Theresa Heinz, became acquainted with the plaintiff in 1956 and subsequently engaged him to sell a farm located near Royalton in 1957. Then on April 21, 1958, the defendants purchased the Floarno Motel in Grand Forks, North Dakota, through the plaintiff who acted as broker for the former owners.

During the first part of February, 1959, defendant Ralph Heinz contacted the plaintiff at Royalton and asked him to sell the motel. Thereafter the plaintiff came to Grand Forks on February 7, 1959, at which time a listing contract was entered into between the plaintiff and the defendants. Item number eleven of the contract, the nucleus of the 'present controversy, provides: "I hereby agree to give an exclusive contract for sale of Floarno Motel for six months." Under the terms of the contract, the defendants were to receive $59,-000.00, everything over this amount being the plaintiff's commission. The only other pertinent provision of this contract is item number ten, which provides as follows: "If the property is sold within one year after contract expires, to anyone to whom Berry Realty has shown the above described property during listing period, full commission is due Berry Realty."

There is a dispute in the evidence in regard to preliminary discussions between the parties leading up to the execution of the listing contract. The defendants testified that the plaintiff had told them there would be no commission due him in the event they sold the property themselves; whereas, the plaintiff testified that he informed the defendants that he alone could sell the motel under the contract and that nothing was said as to whether they could sell the motel themselves without liability to him for the commission.

After the listing contract had been executed, the plaintiff proceeded to advertise the motel for sale in various newspapers throughout Minnesota and North Dakota. He also received and answered numerous letters of inquiry in response to these ad-

vertisements. In addition, he testified that he made ten trips to Grand Forks to interview people who had inquired concerning the motel. The evidence demonstrates quite clearly that the plaintiff expended considerable time, effort, and money in attempting to procure a purchaser; however, from February 7, 1959, until July 10, 1959, he failed to bring a single prospect to see the motel; nor did he at any time produce a person, ready, able, and willing, to purchase the motel.

Approximately two weeks before July 10, 1959, Mr. and Mrs. O. J. Flom of Grand Forks stopped at the motel office and asked if the motel were for sale. Subsequent negotiations between the Floms and the defendants resulted in a sale of the motel on July 10, 1959, for $65,000.00. The listing contract was still in force at the time. Flom, however, testified that he had seen none of the advertising and had had no contact whatsoever with the plaintiff before the sale was consummated. The plaintiff admits he had no contact with Mr. Flom. He does not claim he produced a purchaser for the property. He bases his claim on the terms of the contract.

Sometime during the morning of July 10, 1959, defendant Ralph Heinz telephoned the plaintiff at Royalton and notified him that he had sold the motel. The plaintiff testified that during this conversation he told Heinz that he would be in Grand Forks the following day.

The following day the plaintiff came to Grand Forks where he remained until July 12. Defendant Ralph Heinz testified that the subject of a commission did not enter into their discussions until July 12. At that time the plaintiff informed Heinz that he was due his commission, and Heinz replied that he would never have sold the motel had he known the plaintiff was entitled to a commission because he had accepted too small a down payment. Nothing more came of this matter until the following week when defendant Ralph Heinz telephoned the plaintiff from Little Falls, Minnesota, and

offered him $500.00. The plaintiff, however, refused this offer and demanded that the defendants pay him $1,500.00. This suit to recover a commission of $6,000.00 followed.

There are several assignments of error urged by the defendants on this appeal, but we deem it necessary to consider only two of them. One of these assignments charges that the court erred as a matter of law when at the close of all the evidence he granted the plaintiff's motion for a directed verdict over the objection of the defendants. This assignment is based upon Rule 50(a), N.D.R.Civ.P., which provides, in part:

When Made: Effect. At the close of all of the evidence any party may move the court to direct a verdict in his favor upon one or more claims and against one or more parties. If the adverse party objects thereto, the court shall submit to the jury the issues of all claims as to which evidence has been received upon all issues and as to such claims the motion shall be denied. * *

In Anderson v. Stokkeland, N.D., 125 N.W.2d 665, 667, which contains our latest pronouncement in regard to this question, we observed:

This court repeatedly has pointed out that trial courts ought not to direct verdicts in favor of some party to an action where there is any evidence to support the plaintiff's claim. Hadland v. St. Mark's Evangelical Lutheran Church (N.D.), 111 N.W.2d 775, at 778; Johnson v. Sebens (N.D.), 86 N.W.2d 386. However, we also have held that, where the trial court does direct a verdict in favor of a defendant, and the evidence discloses that the plaintiff had no cause of action against the defendant as to whom the case is dismissed, directing such verdict, while error, is error without prejudice and will not be disturbed on appeal.

In view of the discussion which follows, the trial court erred in granting the plaintiff's motion for a directed verdict. This error was prejudicial to the defendants and requires a reversal.

In granting the plaintiff's motion for a directed verdict, the trial court made the following preliminary observation:

What the parties talked about before the contract was signed—we know you cannot change a written contract by parol, as recently demonstrated in Hanes v. Mitchell, 78 N.D. 341, 49 N.W.2d 606.

However true this may be as a general principle of law, there are well-settled exceptions thereto. One such exception applies when a contract is ambiguous or unclear. In Battagler v. Dickson, 76 N.D. 641, 38 N.W.2d 720, 722, we discussed this exception in the following language:

The object of construing a contract is to ascertain the intention of the parties as it existed at the time of contracting. Wisner v. Field, 15 N.D. 43, 106 N.W. 38; Baird v. Fuerst, 60 N.D. 592, 235 N.W. 594. Section 9–0703, NDRC 1943. Where the contract is written the intention of the parties must, if possible, be ascertained from the writing alone. Sec. 9–0704, NDRC 1943. However, if a clause in a contract is of doubtful or ambiguous meaning it is proper " * * * to search for its true meaning in the light of the extraneous facts and circumstances. This rule is voiced by the Code. Section 3562, [now Sec. 9–0712, NDRC 1943], reads: 'A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates.'" Hazelton Boiler Co. v. Fargo Gas and Electric Co., 4 N.D. 365, 376, 61 N.W. 151, 155. See also Halstead v. Missouri Slope Land and Investment Co., 48 N.D. 220, 184 N.W. 284, and Baird v. Fuerst, 60 N.D. 592, 235 N.W. 594. "And where a contract is ambiguous, and it is impossible to ascertain the intention of the parties thereto from the writing alone, the subsequent acts of the parties showing the construction they put upon the agreement themselves may be looked to by the court." Baird v. Fuerst, 60 N.D. 592, 596, 235 N.W. 594, 596.

See also Severson v. Fleck, 251 F.2d 920 (8th Cir.1958).

The question as to whether an ambiguity exists in a contract is to be determined by the court as a matter of law. Severson v. Fleck, supra. It is apparent that the trial court was of the opinion that the listing contract was unambiguous, since he determined as a matter of law that the plaintiff was entitled to recover a commission. We, however, do not agree with his determination. Many cases involving listing contracts have been decided on the basis of whether a particular contract created an "exclusive agency to sell" or an "exclusive right to sell," in the former instance the courts favoring a result which precludes a sale through another broker, but not through the owner himself; and in the latter case, precluding a sale by anyone, including the owner. The rule is stated thusly in 12 Am.Jur.2d, Brokers, Sec. 226 (1964) at 968–969:

With respect to the right of a broker to compensation on a sale negotiated by the employer without the aid of the broker, a distinction is frequently raised between an exclusive agency to sell and an exclusive right of sale. It is held that where an exclusive agency is given the broker, the owner may still sell the property without liability to the broker unless the broker has procured a purchaser able and willing to buy prior to such time. The right of the owner of the property to sell is implied in such an agency. The only effect of such a contract is to prevent the owner from placing the property in the hands of another agent.

On the other hand, where a broker is given an exclusive right to sell property, as distinguished from an exclusive agency, he is held entitled to the agreed commission, or at least damages, when a sale is made by the owner, and it is immaterial that he was not the procuring cause thereof, provided, however that the employment contract is supported by consideration and is not a mere unilateral offer, and provided also, according to some cases, that the broker has produced a ready, able and willing purchaser or can show damages. In the case of an exclusive right to sell property, there is an implied promise on the part of the owner to do nothing to hinder or obstruct performance by the broker. However, there is some authority that an exclusive right of sale does not deprive the owner of the right to sell his property without liability to the broker. Moreover, the absolute exclusion of an owner's right to sell his property can only be effected by clear and unequivocal terms or necessary implication.

Section 227 continues at 970:

An absolute exclusion of an owner's right to sell his property on his own efforts, without the aid of any broker, can be effected only by a contract so providing in unequivocal terms or by necessary implication. Where any ambiguity exists, the courts favor an interpretation protecting the owner, especially where the contract was drafted by the broker himself.

In determining whether a real-estate broker's contract excludes the owner's right to sell, the use of the words "exclusive agency" or "exclusive sale" is not conclusive, but, as in other cases involving judicial interpretation, all the circumstances must be considered. * *

For similar dissertations see 12 C.J.S. Brokers § 94 (1938) at 219–220 and Annotations in 88 A.L.R.2d 936 (1963) at 940–941.

■ We think the clause "I hereby agree to give an exclusive contract for sale of Floarno Motel for six months" is ambiguous. It is as consistent with an "exclusive agency to sell" as it is with an "exclusive right to sell." It does not expressly negative the owners' right to sell, nor does it do so by necessary implication. Both parties to this action tried the case to a jury on the theory that the terms of the listing contract were ambiguous, and that parol evidence was therefore admissible to explain this ambiguity. This is demonstrated in the first instance by the pleadings. Then, during the course of the trial, both parties introduced, without objection, testimony to explain the intention of the parties when they executed the contract. We have reviewed the evidence and find it is in conflict.

■ The construction contended for by the defendants is both reasonable and tenable. A correct construction would clarify the meaning of the contract, not vary it. Since the writing alone does not afford the means to reach that construction, it was error for the trial court to grant the plaintiff's motion for a directed verdict. The terms of a contract, if it be ambiguous, are matters of fact to be determined in the same manner as other facts. Severson v. Fleck, 251 F.2d 920 (8th Cir.1958). Since this case was tried to a jury, the jury should have been permitted to ascertain these facts.

The judgment of the district court is reversed and a new trial granted.

STRUTZ and ERICKSTAD, JJ., concur.

BURKE, C. J., did not participate.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.