FOSTER COUNTY STATE BANK, A CORPORATION V. P. J. HESTER.

Opinion filed January 29, 1909.

Rehearing denied March 6, 1909.

**Guaranty — Construction — Extent of Liability.**

1. H., who owned a majority of the capital stock of a state bank, sold and assigned the same to M and others. At said time there was among the bills receivable of the bank a note against one C., secured by a chattel mortgage; the face value of the note being $2,430, and the estimated value of the security being about $1,400. As a part consideration for the purchase of said capital stock, H. executed and delivered to respondent the following guaranty:

"Whereas, among the bills receivable in the Foster County State Bank of Carrington, North Dakota, there are notes and obligations secured by certain chattel property, and executed and delivered by George D. Corliss, amounting to the sum of $2,400.00; and

"Whereas said bank is about to be transferred to T. F. McCue and other stockholders:

"Now, therefore, I, P. J. Hester, do hereby guarantee and agree to pay the difference between $1,430.00 and the sum of $2,430.00, in the event that same cannot be realized out of the said personal security, and the said George D. Corliss, and I hereby waive protest, notice of protest and presentment for payment upon this obligation, also time of the collection of the original indebtedness, with the exception that the said bank shall use ordinary means to recover the debt out of said Corliss and the above mentioned securities, otherwise this guaranty shall be absolute and payable to the said Foster County State Bank, its successors or assigns.

"Dated this 16th day of November, A. D. 1903.

"P. J. Hester."

*Held*, construing said instrument, that the same was intended in effect as a guaranty of collection of the entire indebtedness of $2,430 with a limitation of liability under the guaranty to the sum of $1,000. In other words, defendant is liable under the guaranty to pay such portion of the indebtedness, not exceeding $1,000, as plaintiff is unable to collect from the security or from C.

**Same — Evidence — Burden of Proof.**

2. The burden rests on plaintiff to show the extent of H's liability under the guaranty; in other words, the burden is on plaintiff to show how much of said original indebtedness it has been unable to collect either out of the security or from C.

### Same — Appeal and Error — Findings — Evidence.

3. The trial court found, and such finding is entitled to the same weight as the verdict of a jury, that on November 4, 1905, there remained the sum of $1,430 due on such indebtedness, for which judgment was rendered in plaintiff's favor in February, 1906. *Held,* that the evidence sufficiently discloses that there was at least the sum of $1,000 still due on such original indebtedness. Hence, appellant is liable under the said guaranty for the amount recovered in the court below.

### Same — Extension of Time — Discharge of Guaranty — Maturity of Collaterals.

4. The defense that appellant's liability under the guaranty was extinguished by an extension of time for the payment of the indebtedness is not sustained by the evidence; the proof showing that certain notes which were subsequently accepted by plaintiff from the principal debtor were thus accepted merely as collateral security, and under the express condition that their acceptance should not operate to extend the time of payment of such indebtedness, or operate in any way to affect appellant's liability under the guaranty.

### Same — Deferred Maturity of Collateral Does Not Extend Payment of Guaranteed Debt.

5. New notes representing the indebtedness, although made payable at a date later than the date of the maturity thereof, will not operate to extend the time of such indebtedness, so as to exonerate a guarantor, where a contrary expressed intent is shown.

### Appeal and Error — Findings Sustained.

6. The person who represented the plaintiff bank in accepting the new notes testified positively that such new notes would be received only as collateral security to the indebtedness. Such fact was denied by C. The finding of the trial court upon this question was in plaintiff's favor, and such finding is sustained by this court.

Appeal from District Court, Foster county; *Burke, J.*

Action by the Foster County State Bank against P. J. Hester. From a judgment for plaintiff and an order denying a new trial, defendant appeals.

Affirmed.

*S. E. Ellsworth,* for appellant.

Extension of time of payment or performance without the guarantor's consent discharges him. Rev. Codes 1905, Sec. 6092; 14 Am. & Eng. Enc. Law (2nd Ed.) 1165; 20 Cyc. 1473; 14 Am. &

Eng. Enc. Law (2nd Ed.) 1166; Shipman v. Kelley, 38 N. Y. Supp. 597; 24 Am. & Eng. Enc. Law (1st Ed.) 833, 835; Shipman v. Kelley, 41 N. Y. Supp. 328; Springer Lith. Co. v. Graves, 66 N. W. 66; Schnitzler v. Bank, 42 Pac. 496.

The notes are presumptive evidence of a consideration. Rev. Codes 1905, Sec. 5325; Niblack v. Champery, 72 N. W. 402.

Slightest benefit is a consideration. Shipman v. Kelley, supra; Niblack v. Champery, supra.

*T. F. McCue,* for respondent.

Extension to release a surety must be based upon sufficient consideration. McCormick H. & M. Co. v. Raie, 9 N. D. 482, 84 N. W. 346; Roberts v. Richardson, 39 Ia. 390.

Finding supported by testimony will not be disturbed. Magnusson v. Linwell, 9 N. D. 154, 82 N. W. 746; Becker v. Duncan, 8 N. D. 600, 80 N. W. 762; 2 Enc. Pl. & Pr. 396.

Acceptance of collateral security maturing after the principal debt does not discharge a surety. U. S. v. Hodge, 6 How. 279; German Ins. Co. v. Vahle, 28 Ill. App. 557; Big Rapids Nat. Bank v. Peters, 120 Mich. 518; 79 N. W. 891; Remsen v. Graves, 41 N. Y. 471; Fox v. Parker, 44 Barb. 541; Brandt on Suretyship, Sec. 319.

FISK, J. This case was tried in the district court of Foster county by the court; a jury having been waived. Plaintiff's cause of action is based upon the following written guaranty:

"Whereas, among the bills receivable in the Foster County State Bank of Carrington, North Dakota, there are notes and obligations secured by certain chattel property and executed and delivered by George D. Corliss, amounting to the sum of $2,430.00; and

"Whereas, said bank is about to be transferred to T. F. McCue and other stock holders:

"Now therefore I, P. J. Hester, do hereby guarantee and agree to pay the difference between $1,430.00 and the sum of $2,430.00 in the event that same cannot be realized out of the said personal security and the said George D. Corliss, and I hereby waive protest, notice of protest, and presentment for payment upon this obligation, also time of the collection of the original indebtedness, with the exception that the said bank shall use ordinary means to recover the

debt out of said Corliss and the above-mentioned securities, otherwise this guaranty shall be absolute and payable to the said Foster State Bank, its successors or assigns.

"Dated this 16th day of November, A. D. 1903.

P. J. Hester."

The foregoing guaranty was executed and delivered by said Hester to plaintiff bank as a part consideration for the sale by said Hester and the purchase by one McCue and others of a majority of the capital stock of such bank. At the time of such sale and purchase the said George D. Corliss was indebted to the bank in the sum of $2,430, represented by certain notes secured by a chattel mortgage, and it is plaintiff's contention that such security was of the estimated value of only $1,430.00, that the said Corliss was insolvent, and that the guaranty aforesaid was given by Hester with the intention and for the purpose of guaranteeing the payment or collection of such indebtedness over and above the estimated value of the security aforesaid, and this contention was sustained by the trial court. On the other hand, the appellant contends that such guaranty extends to no specific portion of such indebtedness, but only to the difference between $1,430.00 and $2,430.00, or $1,000, and that no liability exists on such guaranty for the reason that prior to the commencement of this action plaintiff realized on such indebtedness from the security and from payments made by Corliss a sum in excess of $1,000. It is also appellant's contention that the plaintiff bank, without the knowledge or consent of defendant, entered into a valid contract with the said Corliss extending the time for the payment of such indebtedness, and that thereby defendant was released from such guaranty. At the conclusion of the trial the district court made findings of fact and conclusions or law, and judgment was ordered and entered in plaintiff's favor for the amount prayed for. Thereafter a motion for a new trial, based upon a statement of the case duly settled, was made and denied, and this appeal is from the judgment and order aforesaid.

Plaintiff assigns error as follows: "(1) The court erred in denying the motion of defendant made at the close of all testimony, except that of the witness McCue, that the action be dismissed upon the ground and for the reason that the guaranty relied upon by the plaintiff in express terms guarantees and agrees to pay only the difference between $1,430.00 and $2,430.00; it appearing from

the undisputed evidence that the $1,000 of the said debt guaranteed by the defendant has been paid. (2) The court erred in overruling the objection of the defendant to the testimony of the witness McCue with reference to an oral agreement between said witness and the defendant regarding the guaranty on which the action is brought, upon the ground that the instrument is clear and unambiguous on its face, that the testimony is offered for the purpose of varying the terms of a written instrument, and is inadmissible for that or for any purpose. (3) The court erred in holding that the time of payment of the indebtedness of $2,430 owing by one George D. Corliss to said plaintiff, payment of part of which was guaranteed by said defendant, was not extended by said plaintiff accepting and said George D. Corliss giving to said plaintiff on the 1st day of October, 1904, four notes, one for $706 and three for $700 each, due respectvely on the 15th day of September in the years 1905, 1906, 1907 and 1908. (4) The court erred in holding that no consideration passed from the debtor, Corliss, to respondent for the acceptance of the four renewal notes. (5) The court erred in holding that respondent, prior to the bringing of this action, used all reasonable means to collect the indebtedness of the debtor, George D. Corliss. (6) The court erred in holding that respondent was entitled to recover of appellant the sum of $1,000, with interest thereon at the rate of 7 per cent, from the 24th day of May, 1906, or any sum or amount whatever. (7) The court erred in holding that the testimony introduced by said plaintiff showed a liability in favor of said plaintiff against said defendant, and in ordering and in entering a judgment in favor of said plaintiff and against the said defendant. (8) The court erred in denying defendant's motion for a new trial."

In his printed argument appellant's counsel considers his assignments of error numbered 1, 2, 6, and 7 together. These assignments involve a construction of the written guaranty above mentioned. As before stated, appellant contends that, whenever there was paid on the Corliss indebtedness or realized from the security a sum equal to or in excess of $1,000, defendant's liability under such guaranty ceased. Such contention is, we think, clearly erroneous. The instrument sued upon is not a guaranty of payment, but amounts merely to a guaranty of collection of such portion of the indebtedness of $2,430 as cannot be collected out of the security or the principal debtor, not exceeding, however, the sum of $1,000.

The terms of the guaranty are somewhat ambiguous, but we think it apparent that the intent was that appellant should pay to respondent such portion of the $2,430, not exceeding $1,000, as could not be collected out of the security or from the principal debtor.

In construing said instrument is is proper to take into consideration the circumstances surrounding the execution and delivery thereof. Appellant was selling and assigning his capital stock in said bank to McCue and others, and among the assets of the bank were these bills receivable in the form of promissory notes executed and delivered by Corliss and secured by chattel mortgage. Corliss was insolvent, and the chattel security was estimated at the value of only $1,400. The purchasers of this stock were unwilling to accept this paper without such guaranty, and it is manifest that the purpose in giving and receiving such guaranty was to supplement such chattel security. To the extent that this indebtedness was deemed sufficiently secured by the chattel mortgage, respondent or the vendeees of the capital stock thereof were not interested in procuring additional security; but they were vitally interested in having the collection of such paper guaranteed as to sums due thereon in excess of the amount which could probably be realized thereon out of such chattel security. We hold that it was the intention of the parties that Hester should be liable under the guaranty to pay to respondent such sum, not exceeding $1,000, as plaintiff should be unable to collect by recourse to the security and to the principal debtor. By giving the instrument this construction we are enabled to give effect to the apparent intent of the parties.

In the light of the rule of construction thus adopted, we are next required to determine whether the evidence is sufficient to warrant the trial court's finding to the effect that at the time of the commencement of the action there was still due plaintiff on such original indebtedness the sum of over $1,000. The record is somewhat meager regarding the exact amount realized by plaintiff on such indebtedness. This is occasioned by reason of the fact that Corliss was indebted to the plaintiff bank on other notes, and the record is silent regarding the application of certain payments made by him. The burden was on plaintiff to prove defendant's liability under the guaranty. In other words, it was required to prove its inability, by the exercise of reasonable diligence, to collect either out of the security or from Corliss the entire original indebtedness, and also the specific sum, if less than $1,000, which it has thus been

unable to collect. It is entirely clear from the evidence that there is a balance of such indebtedness still remaining unpaid, and the only question in this connection is whether such balance equals or exceeds the sum of $1,000. The evidence discloses that in October, 1904, such indebtedness, with accrued interest aggregated the sum of $2,806, for which four notes were executed and delivered by Corliss to plaintiff, one for $706, and three for $700 each. It further appears that Corliss was indebted to plaintiff upon at least two other notes, amounting with interest to about $347 each. These notes are in no manner involved in this litigation, except for the purpose of showing that certain moneys received from the proceeds of certain grain were properly applied thereon; such grain being covered by chattel mortgages securing such notes. Of the $2,806 represented by the four notes above mentioned it is not contended that the same has been paid, with the exception of the amount due on the first two notes and a small payment on one of the others. Furthermore it is undisputed that of the original indebtedness and interest thereon there was due in May, 1906, a balance of $1,468, for which judgment was recovered against Corliss, and no part of which has since been paid. The inevitable conclusion therefore is that, after properly applying all payments claimed to have been made by Corliss, there still remains due on such original indebtedness a sum in excess of $1,000. The record fails to disclose any directions by Corliss as to the application of the various payments. Hence under the provisions of section 5243, Rev. Codes 1905, the creditor could make the application, and, if the creditor fails so to do, the court will apply such payments, first, to interest due, and, second, to the principal. It is therefore entirely clear that, if defendant is liable at all, he is liable for the full amount sued for.

Appellant's next and only other contention is based upon his assignments of error numbered 3, 4, 7, and 8, which present the question whether his liability under the guaranty was extinguished by an extension of time for the payment of the indebtedness thus guaranteed. If plaintiff bank, without appellant's consent, entered into a valid agreement with Corliss, whereby the time for the payment of the indebtedness was extended, then, of course, the guarantor was thereby exonerated. Such in effect is the statute law of this state as well as the general rule. Section 6092, Rev. Codes 1905; 14 Am. & Eng. Encyc. of L. 1165; 20 Cyc. 1472, and cases cited.

The undisputed evidence discloses that in October, 1904, plaintiff took from Corliss four promissory notes, one for $706, and the other three for $700, each, due respectively on September 15, 1905, 1906, 1907, and 1908, which notes represented the amount due from Corliss to the bank at their date; and to secure these notes Corliss executed and delivered to the bank a chattel mortgage upon all crops to be raised during 1905 on section 35, township 146, range 66. It is appellant's contention that the acceptance of these notes amounted in law to an extension of time for the payment of the indebtedness, and, having been accepted without the consent of Hester, his liability under the guaranty ceased. This contention would, no doubt, be sound, were it not for the fact, as found by the trial court, that such notes were accepted merely as collateral and under the express condition, as testified to by the witness McCue, that their acceptance should not operate to affect the liability of the guarantor. The witness McCue, who acted for the bank in taking said notes and mortgage, positively testified that he stated, at the time they were received, that they were taken merely as collateral security to the original indebtedness, and that such indebtedness should remain intact and the liability of the guarantor not affected thereby. It is true that the witness Corliss disputed this, but McCue's version of the facts is both reasonable and probable. He was a lawyer, and as such must have known that the acceptance of such notes and mortgage in the manner contended for by Corliss would release Hester's guaranty, and thereby this valuable right would have been lost to the bank. The trial court evidently believed McCue's testimony, and we are not disposed to overrule the trial court's finding upon such issue of fact. The case being one properly triable to a jury, where a jury is waived, the findings of the court are entitled to the same weight as a verdict of a jury would have been. Encyc. Pl. & Pr. 396, and cases cited; 6 Cur. Law, 1830, and numerous recent cases therein collated.

Under the facts thus established, can it be said, as a matter of law, that appellant was exonerated from liability under his guaranty? We think not. But it is insisted by appellant's counsel that the giving of the new notes, in the absence of an agreement to the contrary, operated per se to extend the time of payment of the original indebtedness, and he argues that no such agreement was entered into, even conceding the truth of McCue's testimony. We see no merit in such contention. If McCue's testimony is to be believed, then

that of the witness Corliss must be discredited, as their testimony is wholly inconsistent and cannot be reconciled. Our attention has been called by appellant's counsel to the case of Frank v. Williams, 36 Fla. 136, 18 South. 351, and numerous other cases, holding to the effect that testimony by the creditor that he did not extend the time of payment by taking the notes, and similar expressions, are mere conclusions and cannot control the legal affect of his acts. These cases were no doubt correctly decided upon the facts there involved, but they differ widely from the facts in the case at bar, as the following language in the above-cited case discloses: "The cashier of the bank, it is true, testifies that there was no contract with the company, or with any one, to give time until the new note was paid; but this does not at all affect the case, since, as we have seen, the taking of a new security implies an agreement to suspend the original debt, unless the parties agree that it shall not so operate, and no such agreement is proven in the present case." The correct rule is stated in Brandt on Suretyship & Guaranty (3d Ed.) § 403, as follows: "The mere fact that the creditor takes collateral security for the debt, which matures after the time the debt for which the surety is liable comes due, will not discharge the surety, if it does not amount to on extension of the time of payment. If, when the collateral security is given, there is an express agreement, either that the time of payment of the debt shall or shall not be extended thereby, such agreement will prevail. If there is no express agreement, it has been held that no agreement to delay the collection of an overdue debt is implied from the receipt by the creditor from the principal of a note or other obligation not yet due, merely as collateral security therefor. In holding this to be the law, the following distinctions were drawn: 'There is a class of securities payable on time, the taking of which, on an antecedent debt, implies an agreement for the suspension of the antecedent debt; but that class of cases is confined to those where the creditor accepts the note or bill for and on account of the antecedent debt, and the new security, for the time being, at least, is to take the place of and represent the original debt. That class is distinguishable from, and not to be confounded with, the class where the creditor has accepted simply a new additional or collateral security for an antecedent debt. In the former transaction an agreement to give time may be implied, but not out of the latter transaction.'" In section 413 the same author states that even where the creditor

extends the time of payment to the principal, but at the same time expressly reserves all remedies against the surety, the latter is not discharged by such extension. We understand the above to be correct statements of the law and are amply supported by authorities therein cited. See also 1 Brandt on Suretyship & Guaranty, §§ 402-414, and cases cited, and especially Austin v. Curtis, 31 Vt. 64; Remsen v. Graves, 41 N. Y. 471; Globe Mutual Insurance Co. v. Carson, 31 Mo. 218; Newcomb v. Blakeley, 1 Mo. App. 289; Noll v. Oberhellmann, 20 Mo. App. 336; Schlager v. Teal, 185 Pa. 322, 39 Atl. 963.

Our conclusion therefore is that the judgment of the district court is correct, and the same is accordingly affirmed.

ELLSWORTH and CARMODY, JJ., not participating.