CITIZENS STATE BANK of Rugby, North Dakota, a Corporation
and Harold Thorson, v. J. H. LOCKWOOD and A. M. Iverson.

(156 N. W. 47.)

In a contract for the purchase of plaintiff bank by Thorson from defendants,
it was stipulated that defendants "agree to have all bills receivable now in said
bank which are past due or payable on demand, either renewed and secured or
paid."

Suit is brought as upon a guaranty of payment by defendants for a $6,000
balance remaining of unsecured and unpaid commercial paper.

*Held:*

Contract — bank — sale — bills receivable — guaranty of payment — suit on
— guaranty of collection.

1. That the paragraph in question is not a guaranty of payment, but consti-
tutes in effect a guaranty of collection.

Damages recoverable — contract — breach of — notes and bills.

2. Defendants are responsible only to the amount of the actual damage occa-
sioned by their breach of contract in failing to procure any remaining portion
of said notes to be renewed and secured or paid.

Measure of damages — value of notes and bill — amount due on them — the
difference — expense of collection.

3. Such damages would be measured by the difference between the actual value
of the notes and the amount due upon them, together with the necessary ex-
pense of endeavoring to enforce their payment.

Opinion filed December 4, 1915.   On rehearing January 7, 1916.

Appeal from the District Court of Pierce County; *Buttz,* Special
Judge.

Affirmed.

*Albert E. Coger,* for appellants.

Where there is no ambiguity in the language of the contract, the
language itself must be alone consulted in ascertaining the intention.
20 Cyc. 1423, 1424; Manhattan Rolling Mill v. Dellon, 113 N. Y.
Supp. 571.

But where the court and the lawyers on both sides of the case fail
to agree on what the contract means, under such circumstances oral
testimony was admissible to throw light upon its meaning.   Hazelton

Boiler Co. v. Fargo Gas & Electric Co. 4 N. D. 376, 61 N. W. 151;. Code, § 5351; Heidenheimer v. Cleveland, — Tex. —, 17 S. W. 524;. Chicago v. Sheldon, 9 Wall. 50, 19 L. ed. 594; Topliff v. Topliff, 122 U. S. 121, 30 L. ed. 1110, 7 Sup. Ct. Rep. 1057; District of Columbia v. Gallaher, 124 U. S. 505, 31 L. ed. 526, 5 Sup. Ct. Rep. 585, 19 Ct.. Cl. 564; 9 Cyc. 591.

The only result of introducing extraneous matters would be confusion; the answer here discloses that such extraneous matters are pleaded. with the design to contradict the written contract. 21 Am. & Eng. Enc.. Law, 1109, 1110; 17 Cyc. 668; 11 Enc. Pl. & Pr. 686; 9 Enc. Pl. & Pr. 686, 687.

Before parol evidence to prove fraud can be introduced, it must be pleaded. 17 Cyc. 699; Western Mfg. Co. v. Rogers, 54 Neb. 456, 74 N. W. 849; Ellison v. Gray, 55 N. J. Eq. 581, 37 Atl. 1018; Caudrey's. Case, 5 Coke, 25.

Where a contract is in writing, and is susceptible of proper construction and interpretation according to the well-established rules, excepting in the case of fraud pleaded and proved, it cannot be contradicted by parol. Towner v. Lucas, 13 Gratt. 705; Thorne v. Warfflein,. 100 Pa. 527; Branan v. Warfield, 3 Ga. App. 586, 60 S. E. 325;. Wigmore, Ev. § 2435.

In such cases the intention of the parties is to be gathered and determined from the contract itself. Code, §§ 5381–5383, 7316;. Hennessy v. Griggs, 1 N. D. 52, 44 N. W. 1010; Northwestern Fuel Co. v. Bruns, 1 N. D. 137, 45 N. W. 699; National German American Bank v. Lang, 2 N. D. 66, 49 N. W. 414; Edwards & M. Lumber Co.. v. Baker, 2 N. D. 292, 50 N. W. 718; Plano Mfg. Co. v. Root, 3 N. D.. 165, 54 N. W. 924; Hutchinson v. Cleary, 3 N. D. 270, 55 N. W. 729;. William Deering & Co. v. Russell, 5 N. D. 319, 65 N. W. 691; Fletcher Bros. v. Nelson, 6 N. D. 94, 69 N. W. 53; Foster v. Burlong, 8 N. D. 282, 78 N. W. 986; Reeves v. Bruening, 13 N. D. 157, 100 N. W. 241; Alsterberg v. Bennett, 14 N. D. 596, 106 N. W. 49; Rieck v. Daigle, 17 N. D. 365, 117 N. W. 346; American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99; McCulloch v. Bauer, 24 N. D. 109, 139 N. W. 318; Cughan v. Larson, 13 N. D. 373, 100 N. W. 1088; Gilbert v. Moline Plough Co. 119 U. S. 492, 30 L. ed. 476, 7 Sup. Ct. Rep. 305.

If I agree to have a thing done, I agree to get it done by taking the proper steps or methods. I agree to accomplish it. I assume the obligation to do it or to have it done. I agree to bring about the result contemplated by the contract. Huck v. Gaylord, 50 Tex. 582; Com. v. Delamater, 13 Pa. Co. Ct. 155; True v. Harding, 12 Me. 193; Morris v. Bradley, 20 N. D. 646, 128 N. W. 118.

The agreement here was to have the notes renewed and secured, or paid. It is in the alternative. The party obligating himself so to act and do has the right of selection as to which course he will pursue. But he must give notice of his selection before the time of performance arrives, or such right passes to the other party. Code, §§ 5222, 5223, 5361, 6075; Acme Harvester Co. v. Axtell, 5 N. D. 315, 65 N. W. 680; 20 Cyc. 1397, 1398; Nading v. McGregor, 121 Ind. 465, 6 L.R.A. 686, 23 N. E. 283; Kent v. Silver, 47 C. C. A. 404, 108 Fed. 365; Merritt v. Haas, 106 Minn. 275, 21 L.R.A.(N.S.) 153, 118 N. W. 1023, 119 N. W. 247.

A stipulation in a contract will be held to be a condition precedent only when the contract clearly requires such construction. The contract in question was not such. Walker v. Stimmel, 15 N. D. 484, 107 N. W. 1081; Roberts, T. & Co. v. Laughlin, 4 N. D. 167, 59 N. W. 967; Foster County State Bank v. Kester, 18 N. D. 135, 119 N. W. 1044; Smith v. Snow, 16 N. D. 306, 112 N. W. 1062; Woody v. Haworth, 24 Ind. App. 634, 57 N. E. 272; McCague Bros. v. Irey, 73 Neb. 602, 103 N. W. 281; Swindells v. Dupont, 88 Minn. 9, 92 N. W. 468; Oneida Steel Pulley Co. v. New York Leather Belting Co. 120 App. Div. 625, 105 N. Y. Supp. 534; Winchell v. Doty, 15 Hun, 1; Tuton v. Thayer, 47 How. Pr. 187; Kahn v. Eisenberg, 97 N. Y. Supp. 959; Bossert v. Striker, 142 App. Div. 5, 126 N. Y. Supp. 726; Pierce v. Merrill, 128 Cal. 464, 79 Am. St. Rep. 56, 61 Pac. 64; Klien v. Kern, 94 Tenn. 34, 28 S. W. 295; Avery v. Moore, 87 Kan. 337, 124 Pac. 173; Ralph v. Eldridge, 137 N. Y. 525, 33 N. E. 559; Jackson v. Swart, 182 N. Y. 373, 75 N. E. 226.

The guarantee was not required to bring action or take any steps, before looking to his guarantor to meet the contract. 20 Cyc. 1449, 1450, note 91; Donley v. Bush, 44 Tex. 1; Grannis v. Miller, 1 Ala. 471; Douthitt v. Hudson, 4 Ala. 110.

The liability of the guarantor of a note, if the guaranty is made

before maturity, accrues at maturity, if made after maturity, within a reasonable time thereafter. Yeates v. Walker, 1 Duv. 84; Crocker v. Gilbert, 9 Cush. 131; Read v. Cutts, 7 Me. 186, 22 Am. Dec. 184; Lane v. Levillian, 4 Ark. 76, 37 Am. Dec. 769; Wills v. Ross, 77 Ind. 1, 40 Am. Rep. 279; Foster v. Tolleson, 13 Rich. L. 31; Munro v. Hill, 25 S. C. 476; 1 Brandt, Suretyship, 3d ed. § 222.

A demand for anything is never necessary, when it conclusively appears that it would have been unavailing for any purpose, that it would be futile. 1 Cyc. 699; Myrick v. Bill, 3 Dak. 284, 17 N. W. 268; Thompson v. Thompson, 11 N. D. 211, 91 N. W. 44; More v. Burger, 15 N. D. 345, 107 N. W. 200.

The measure of damages is prima facie the par value of the notes. Page, Contr. § 1594; Barron v. Mullin, 21 Minn. 374; Browne v. St. Paul Plow Works, 62 Minn. 90, 64 N. W. 66; Lathrop v. Atwood, 21 Conn. 117; Furnas v. Durgin, 119 Mass. 500, 20 Am. Rep. 341; Thompson v. Richards, 14 Mich. 172; Sturgess v. Crum, 29 Mo. App. 644; Richards v. Whittle, 16 N. H. 259; Sedgw. Damages, 9th ed. §§ 618, 622a, 622b.

Under a contract to procure the notes to be paid, the rule of damages can only be the amount due on the notes for principal and interest. Robinson v. Gilman, 43 N. H. 485.

*L. N. Torson* and, *Torson & Wenzel* and, *Engerud, Holt, & Frame,* for respondents.

The essence of a contract of guaranty is that the guarantor shall do the very act which another person has promised to do. Comp. Laws 1913, § 6651; Gridley v. Capen, 72 Ill. 11.

"A collateral undertaking to pay a debt owing by a third person, in case the latter does not pay." Dole v. Young, 24 Pick. 250; Buckingham v. Murray, 7 Houst. (Del.) 176, 30 Atl. 779; Northern State Bank v. Bellamy, 19 N. D. 509, 31 L.R.A.(N.S.) 149, 125 N. W. 888; Starr v. Millikin, 180 Ill. 458, 54 N. E. 328.

The contract here before the court is analogous to a guaranty of collection. Foster County State Bank v. Hester, 18 N. D. 135, 119 N. W. 1044; Hazelton Boiler Co. v. Fargo Gas & Electric Co. 4 N. D. 365, 61 N. W. 151; Young v. Metcalf Land Co. 18 N. D. 441, 122 N. W. 1101; Locke v. McVean, 33 Mich. 473; Curtis v. Hubbard, 6 Met. 186; Home Sav. Bank v. Hosie, 119 Mich. 116, 77 N. W. 625;

Belloni v. Freeborn, 63 N. Y. 383; Stewart v. Marvel, 101 N. Y. 357, 4 N. E. 743.

The appellant drew the contract himself, and he is therefore in no position to ask the court to give it a meaning and effect which its words and provisions do not warrant. Comp. Laws 1913, § 5914.

The contract was and is in substance and effect an assurance, a warranty, that the makers of the notes have the cash or resources with which to pay them; in short that they are solvent it is therefore a mere guaranty of collection. Carter v. McGehee, 61 N. C. (Phill. L.) 431; Curtis v. Smallman, 14 Wend. 231; Cowles v. Pick, 55 Conn. 251, 3 Am. St. Rep. 44, 10 Atl. 569; Walker v. Forbes, 25 Ala. 139, 60 Am. Dec. 498; Dewey v. W. B. Clark Invest. Co. 48 Minn. 130, 31 Am. St. Rep. 623, 50 N. W. 1032; Burton v. Dewey, 4 Kan. App. 589, 46 Pac. 325; Crane v. Wheeler, 48 Minn. 207, 50 N. W. 1033; Union Nat. Bank v. First Nat. Bank, 45 Ohio St. 236, 13 N. E. 884; Comp. Laws 1913, § 6658; Roberts, T. & Co. v. Laughlin, 4 N. D. 167, 59 N. W. 967.

It is a mere promise to make good to the holder of the notes what he himself cannot collect from the makers. Mosher v. Hotchkiss, 2 Keyes, 589; 1 Brandt, Suretyship, § 111; Tuton v. Thayer, 47 How. Pr. 187; Coolidge v. Brigham, 5 Met. 68; Burton v. Dewey, 4 Kan. App. 589, 46 Pac. 325.

It is well settled that before the promisee in a guaranty of collection can sue the promisor, he must exhaust his legal remedies against the makers of the notes, and thereby established the measure and extent of his loss. Smith v. Snow, 16 N. D. 306, 112 N. W. 1062; Roberts, T. & Co. v. Laughlin, 4 N. D. 167, 59 N. W. 967; Bosman v. Akeley, 39 Mich. 710, 33 Am. Rep. 447; Cowles v. Pick, 55 Conn. 251, 3 Am. St. Rep. 44, 10 Atl. 569; Burton v. Dewey, 4 Kan. App. 589, 46 Pac. 325; Central Invest. Co. v. Miles, 56 Neb. 272, 71 Am. St. Rep. 681, 76 N. W. 566; McMurray v. Noyes, 72 N. Y. 523, 28 Am. Rep. 180; Peck v. Frink, 10 Iowa, 193, 74 Am. Dec. 384; Comp. Laws 1913, § 7146; Mosher v. Hotchkiss, 2 Keyes, 589; Coolidge v. Brigham, 5 Met. 68; Lehneis v. Egg Harbor Commercial Bank, — N. J. Eq. —, 26 Atl. 797; Anderson v. First Nat. Bank, 6 N. D. 497, 72 N. W. 916; Roberts, T. & Co. v. Laughlin, 4 N. D. 176, 59 N. W. 967; Cosand v. Bunker, 2 S. D. 294, 50 N. W. 84; Booth v. Powers, 56 N. Y. 22;

Thayer v. Manley, 73 N. Y. 305; Young v. Metcalf Land Co. 18 N. D. 441, 122 N. W. 1101.

Appellant has mistaken his remedy, and has not stated a cause of action. He does not plead and prove that his legal remedies have been exhausted, and thus fix his loss, if any. Smith v. Snow, 16 N. D. 306, 112 N. W. 1062; Roberts, T. & Co. v. Laughlin, 4 N. D. 167, 59 N. W. 967; Cowles v. Pick, 55 Conn. 251, 3 Am. St. Rep. 44, 10 Atl. 569; Crane v. Wheeler, 48 Minn. 207, 50 N. W. 1033; Central Invest. Co. v. Miles, 56 Neb. 272, 71 Am. St. Rep. 681, 76 N. W. 566; McMurray v. Noyes, 72 N. Y. 523, 28 Am. Rep. 180; Mosher v. Hotchkiss, 2 Keyes, 589; Day v. Elmore, 4 Wis. 190; Peck v. Frink, 10 Iowa, 193, 74 Am. Dec. 384; Grannis v. Miller, 1 Ala. 471; Nesbit v. Bradford, 6 Ala. 748; Curtis v. Smallman, 14 Wend. 231; Union Nat. Bank v. First Nat. Bank, 45 Ohio St. 236, 13 N. E. 884; Clay v. Edgerton, 19 Ohio St. 549, 2 Am. Rep. 422; Burton v. Dewey, 4 Kan. App. 589, 46 Pac. 325.

In this case there is neither allegation nor proof that appellant has tried, by action or otherwise, to collect from the makers. Roberts, T. & Co. v. Laughlin, 4 N. D. 167, 59 N. W. 967; Anderson v. First Nat. Bank, 6 N. D. 497, 72 N. W. 916; Cosand v. Bunker, 2 S. D. 294, 50 N. W. 84; Booth v. Powers, 56 N. Y. 22; Thayer v. Manley, 73 N. Y. 305.

From his pleading and showing he has sustained no legal loss. Smith v. Snow, 16 N. D. 306, 112 N. W. 1062.

A contract of guaranty is a collateral undertaking. It is a promise to pay if the person whose obligation is guaranteed does not pay. There is a vast distinction between such a contract and the one before us. Northern Sav. Bank v. Bellamy, 19 N. D. 509, 31 L.R.A.(N.S.) 149, 125 N. W. 888.

Goss, J. This action is brought upon contract upon an alleged written guaranty. It reads as follows:

This agreement made and entered into this 29th day of September, A. D. 1911, by and between A. M. Iverson and J. H. Lockwood, of Rugby, North Dakota, now owners of the Citizens State Bank of Rugby,

parties of the first part, and Harold Thorson, of Drake, North Dakota, party of the second part,

Witnesseth, That the said parties of the first part for and in consideration of the sum of Eight Thousand Dollars to them in hand paid in Bills Receivable of the said Bank, such as the party of the second part may select, have bargained and sold unto the said party Eighty (80) shares of capital stock of the said Citizens State Bank of Rugby, North Dakota, hereby agree to deliver to the said party of the second part commission notes and mortgages securing the same to the amount of $10,145.

The said parties of the first part further agree to transfer their good will to the said bank, and not to engage in any banking business in the city of Rugby, North Dakota, for a period of five years, nor to make any real estate loans for sale or on commission.

The said parties of the first part further agree to have all bills receivable now in said bank, which are past due or payable on demand, either renewed and secured or paid.

This decision must depend upon the construction to be given to the last paragraph. Plaintiffs contend that by the words "parties of the first part further agree to have all bills receivable now in said bank, which are past due or payable on demand, either renewed and secured or paid,"—defendants have agreed that they will pay all said paper not renewed and secured. Defendants insist that the construction should be that they will have said paper renewed and secured, or paid by the makers. If the plaintiffs are right, this suit is maintainable upon the written contract. If defendants be correct, they can be responsible only to the amount of the actual damage any breach of their contract in failing to procure the makers to pay the notes may have caused plaintiffs, and which damages would be measured by the difference between the actual value of the notes and the amount due upon them, together with the necessary expense of endeavoring to enforce payment.

This portion of the contract does not purport to be one for absolute indemnity. Defendants are not guarantors of payment, but only of collection. Their agreement is none other than to have the makers of all past-due or demand bills receivable, either renew and secure or pay. Such is clearly the construction to be given. Had the agreement ended

with the words "renewed and secured," omitting the words "or paid," it could not be contended that a guaranty of payment could be implied. The only obligation upon defendants would have been to have, procure, cause, or bring about the renewing and securing of the paper by the makers. Did the parties intend, therefore, to obligate themselves to pay absolutely these debts of others by the addition of the words "or paid?" To hold that such was their intent necessitates a construction that the words "or paid" was intended as the penalty of what must be declared their guaranty of payment. Suppose the contract had omitted the words "or paid," and this suit, instead of being brought upon the grounds urged, was instead for damages because the notes had been allowed by defendant to be paid, instead of renewals with security procured or exacted? In other words, with these two words omitted, had plaintiffs sued for damages because their money was not kept at interest, what would have been the answer? Simply that the agreement necessarily implied the alternative of payment by the makers, in case they preferred to pay rather than renew and secure. The words "or paid" add nothing to the legal import of the contract. The omitted words were nevertheless understood as necessarily an implied part of the contract. How, then, can the situation be changed when the parties have but mentioned such alternative, instead of leaving it to implication? This fairly tests the question, and concludes it against the plaintiff. Appellants concede the alternatives "secure or pay" was both given and intended, but argue that, because the alternative of procuring security was not performed by procuring within a reasonable time renewals and security, said alternative under § 4779, Comp. Laws 1913, ceased, and defendants became liable absolutely to pay as upon a guaranty of payment. The fallacy in this position is that it necessitates an entire change of the nature and legal effect of the contract, which is to be construed and determined as of the time of contracting, and not retrospectively, dependent on how it was performed or violated, no reference to practical construction being here had. Whether it be a contract guarantying payment, or merely guarantying collection, it is the same now as when executed, and if then it only guaranteed collection, it can never be held to guarantee payment simply because in terms it granted an alternative. That an alternative was given does not authorize the addition, by construction, of a penalty not contracted for. To do so

would be nothing short of making a contract for the parties which they have not seen fit to make for themselves.

There are various rules for construction and interpretation of guaranties. In Bell v. Bruen, 1 How. 169, 11 L. ed. 89, it is said that construction of a guaranty should be adopted "which, under all the circumstances of the case, ascribes the most reasonable, probable, and natural conduct to the parties." Ibid.; Lawrence v. McCalmont, 2 How. 450, 11 L. ed. 335; London & S. F. Bank v. Parrott, 125 Cal. 482, 73 Am. St. Rep. 64, 58 Pac. 164; Crane Co. v. Specht, 39 Neb. 132, 42 Am. St. Rep. 562, 57 N. W. 1015; Swift & Co. v. Jones, 135 Fed. 438. This is at least a safe and sane general proposition. Also it should be remembered that a guaranty is an engagement to pay the debt of another, and "there is certainly no reason for giving it an expanded signification or liberal construction beyond the fair import of the terms. . . . It is to be construed according to what is fairly to be presumed to have been the understanding of the parties, without any strict technical nicety. The presumption is, of course, to be ascertained from the facts and circumstances accompanying the entire transaction." 6 Enc. U. S. Sup. Ct. Rep. 584 E.

Search has been made in vain for a guaranty identical or closely analogous in terms. An exhaustive reading of authority convinces that each case must be decided under its peculiar facts, and largely upon general principles. It was well said in White's Bank v. Miles, 73 N. Y. 335, 29 Am. Rep. 157, at page 161: "Precedents do not help much in the construction of such instruments. The dividing line between those which are limited [guaranties] and those which are continuous is not always plainly seen, and cases apparently quite similar are sometimes found upon one side of it and sometimes upon the other. Where there is uncertainty upon the face of the instrument, its construction must necessarily depend upon the circumstances which throw light upon it, and hence the diversity." Exactly our conclusions. A few of the many adjudicated guaranties may be briefly set out to illustrate the difficulty of applying precedent. For instance, in Hotchkiss v. Barnes, 34 Conn. 28, 91 Am. Dec. 713, the guaranty reads: "You can let Day have what goods he calls for, and I will see that the same are settled for. Yours truly, H. S. Barnes." Held, under the explanatory circumstances, to be a continuing guaranty. On the contrary, in the

guaranty in S. Hamill Co. v. Woods, 94 Iowa, 246, 62 N. W. 735, the following is held not to be a continuing guaranty: "Messrs. Hamill & Co. Keokuk, Iowa: I agree to be responsible personally for any goods you may let Robert Breed have, and I will see the same is paid the same as if it was my own debt. [Signed] Annie Woods." This language was held "not so clear as to indicate its meaning conclusively," and parol evidence was allowed to show the circumstances under which it was executed. Likewise in the recent case of Merchants' Nat. Bank v. Cole, 83 Ohio St. 50, 93 N. E. 465, Ann. Cas. 1912A, 779, the following was held to be not necessarily a continuing guaranty, and explainable by parol as to the circumstances and the subject-matter. It would seem to be equally, if not more, clear, certain, explicit, and definite than the one in this contract. The guaranty referred to reads: "I hereby guarantee the payment of all notes of F. E. & G. H. Cole held by the Merchants National Bank; also all renewals of same, or any new loans made to either F. E. or G. H. Cole by the said bank. [Signed] Lucy A. Cole." It was held to not necessarily include certain new loans made by said bank to said parties. The annotator to Ann. Cas. 1912A, 779, has collected and reviewed scores of cases. And under our own decisions in case of any doubt as to the construction to be adopted, proof of explanatory circumstances is permitted. Foster County State Bank v. Hester, 18 N. D. 135, 119 N. W. 1044, Hazelton Boiler Co. v. Fargo Gas & Electric Co. 4 N. D. 365, 61 N. W. 151. In the latter case the court explicitly held the contract to be so clear and unambiguous as to obviate the necessary for extrinsic evidence to understand it, but nevertheless it was held to be explainable by the surrounding facts and circumstances. This is perhaps an extreme holding, but it illustrates the reluctance to construe a contract from its terms alone, where any ambiguity arises, or where it is "in any respect ambiguous or uncertain." Comp. Laws 1913, § 5909. See also §§ 5896–5907, Comp. Laws 1913.

But if there be ambiguity in this contract, it is as to whether the paragraph in question amounts to any guaranty whatever. If judicial notice be taken of banking usages, and rules of the state banking department relative to bad debts. (Comp. Laws 1913, §§ 4146–5191), in connection with the time of the year and that the bank was necessarily to be kept a solvent and going institution, grave doubt might arise as to whether any guaranty whatever was understood to be taken or

given by the agreement "to have all bills receivable, past due or payable on demand, either renewed and secured or paid." But counsel for respondent have simplified the question by conceding that so far as this case is concerned it may be taken as a guaranty of collection, and have briefed upon that basis. The guaranty is certainly not one of payment.

In the brief of appellants, it is urged that "no sane business man would either buy the $8,000 worth of capital stock of this bank, or take it as a gift, unless such an assurance as a guaranty of payment of past-due paper was made." It is unnecessary to speculate as to what should have been contracted for, to determine what has actually been agreed to. It may be remarked, however, that the written contract provides considerable security to the purchasers by its stipulation that they may pay the purchase price of these eighty shares of capital stock by delivering defendants $8,000 face value of such bills receivable of the bank as the purchasers should select and turn over to the sellers as the purchase price. Needless to say, no gilt-edged securities would be delivered to the sellers as said purchase price, if there be worthless paper to turn back. But this was not all. The contract further provides that $10,450 in commission notes and mortgages securing the same should be delivered with the bank on the purchase; $18,450 of indemnity is thus taken. Had more been sought, it should have been plainly stipulated for. That the purchasers knew how to prepare a contract and express themselves therein is evident by these very provisions. It is but reasonable to conclude that had there been any intent either to exact or to give any such broad guaranty as one of payment of all past-due and demand paper remaining unsecured, usual banking custom would have been followed, and plain and unequivocal guaranties of payment taken and given, either by contract or by indorsement upon said commercial paper.

The contract amounts in legal effect to but a guaranty of collection. It affords no basis for a recovery as upon a guaranty of payment. Dismissal of this action is affirmed.

COOLEY, District Judge, dissenting. It is naturally with some hesitation that I dissent from the majority opinion of the court; but a careful consideration of the facts and the law applicable thereto has convinced me that the plaintiffs should prevail, and this conviction has not

been shaken by the majority opinion. It is therefore with all due deference to the majority that I presume to set out, somewhat in detail, my views of the law and the facts in this case, with some reference to the reasons assigned by the majority for their adverse conclusion.

The material facts in this case are not disputed. At the time of the commencement and trial of this action, the Citizens State Bank of Rugby, North Dakota, was a banking corporation organized under the laws of this state, and having a capital stock of $10,000. At and prior to the execution of the contract hereinafter mentioned, the defendant J. H. Lockwood was the president, and the defendant A. M. Iverson was the vice president of the said bank. Together they owned and controlled $8,000 of the capital stock. Being desirous of procuring for himself and his associates a controlling interest in said bank, the plaintiff Harold Thorson entered into negotiations therefor with the defendants, which negotiations culminated in the following written agreement:

'This agreement, made and entered into this 29th day of September, A. D. 1911, by and between A. M. Iverson and J. H. Lockwood, of Rugby, North Dakota, now owners of the Citizens State Bank of Rugby, parties of the first part, and Harold Thorson, of Drake, North Dakota, party of the second part,

Witnesseth, That the said parties of the first part, for and in consideration of the sum of eight thousand dollars, to them in hand paid in Bills Receivable of the said bank, such as the party of the second part may select, have bargained and sold unto the said party [of the second part] Eighty (80) shares of capital stock of the said Citizens State Bank of Rugby, North Dakota, hereby agree to deliver to the said party of the second part commission notes and mortgages securing the same to the amount of $10,145.

The said parties of the first part further agree to transfer their good will to the said bank and not to engage in any banking business in the city of Rugby, North Dakota, for a period of five years, nor to make any real estate loans for sale or on commission.

The said parties of the first part further agree to have all Bills Receivable now in said bank, which are past due or payable on demand, either renewed and secured or paid.

In Testimony Whereof, etc., etc.

At the time of the execution of the contract there were in said bank bills receivable that were past due and payable on demand amounting to approximately $25,000. Of these bills receivable, there remained at the time of the trial about $6,600 that had not been renewed and secured or paid.

Basing their cause of action upon the following provision of the contract: "The said parties of the first part further agree to have all bills receivable now in said bank, which are past due or payable on demand, either renewed and secured or paid," the plaintiff, in April, 1913, instituted this action against the defendants to recover as damages, for defendants' failure to comply with this agreement, the amount due on the notes that were past due and payable on demand, held by said bank at the time of the sale, and which, at the commencement of the action, had not been renewed and secured or paid. In their complaint the plaintiffs offered to indorse and deliver all of said notes to the defendants, and to assign and deliver to them any security held in connection with any of said notes upon payment to plaintiffs by defendants of the amount due. The issues were tried to a jury, and at the conclusion of the testimony both sides moved for a directed verdict, whereupon the lower court discharged the jury, and upon findings of fact and conclusions of law subsequently made, judgment was duly entered for defendants.

This appeal involves the interpretation of the following clause of said contract: "The said parties of the first part further agree to have all bills receivable now in said bank, which are past due or payable on demand, either renewed and secured or paid."

It would seem that the majority of the court have entirely misconceived the nature of the agreement contained in the paragraph under consideration. Now, an alternative obligation is defined as "an obligation stipulating for the doing of one or the other of two things, and discharged by the performance of either." By the terms of this agreement the defendants agreed to have certain bills receivable either renewed and secured or paid. The obligation of the defendants was therefore an alternative obligation,—to effect the performance of either one of two separate and distinct acts, the performance of either one of which would satisfy the terms of the agreement. The situation is not different from what it would be had the defendants, in one part of the contract,

agreed to have the notes renewed and secured, and in another and subsequent part of the contract, agreed that in the event they did not have the notes renewed and secured, they would have them paid. Nor is it different from what it would be had the agreement been framed so as to read: "The said parties of the first part further agree to have all bills receivable . . . either paid or renewed and secured." The paragraph in question contains two separate and distinct agreements. They are both principal agreements. Neither is secondary or subordinate to the other. It is therefore by no means a fair test of this question to eliminate from the clause under consideration the words, "or paid." As before stated, the obligation assumed by the defendants is in the alternative.

Comp. Laws 1913, § 5778 (Rev. Codes 1905, § 5222) provides: "If an obligation requires the performance of one of two acts in the alternative, the party required to perform has the right of selection, unless it is otherwise provided by the terms of the obligation."

Comp. Laws 1913, § 5779 (Rev. Codes 1905, § 5223) provides: "If the party having the right of selection between alternative acts does not give notice of his selection to the other party, within the time, if any, fixed by the obligation, . . . or if none is so fixed, before the time at which the obligation ought to be performed, the right of selection passes to the other party."

Comp. Laws 1913, § 5917 (Rev. Codes 1905, § 5361) provides: "If no time is specified for the performance of any act required to be performed, a reasonable time is allowed."

A reasonable time had elapsed between the 29th day of September, 1911, and April, 1913, for the performance by the defendants of any obligation assumed by them under the terms of the agreement, and no selection having been made by the defendants during that time, the right of selection passed to the plaintiffs. It was therefore optional with the plaintiffs to bring an action for damages for failure to have the notes renewed and secured, or for failure to have the notes paid. The plaintiffs have chosen the latter alternative.

The contract, therefore, which plaintiffs are seeking to enforce in this action, pursuant to such alternative, is, when reduced to its lowest terms, "We agree to have the designated notes paid within a reasonable time." It is the agreement to have the notes paid that is the basis of

this action, and it would seem that in determining the proper interpretation to be given to this agreement, it would be a strange process of reasoning that would permit of an elimination of the agreement itself from any consideration whatsoever.

What the legal liability of defendants would be under an agreement to have the notes renewed and secured only, is entirely beside the question in this case, and the solution of that question, whatever it may be, is by no means conclusive of plaintiffs' rights under the agreement to have the notes paid.

The majority of the court have assumed that the only undertaking by the defendants was to have the notes renewed and secured. They say: "The words 'or paid' adds nothing to the legal import of the contract. The omitted words were nevertheless understood as necessarily an implied part of the contract. How, then, can the situation be changed when the parties have but mentioned such alternative, instead of leaving it to implication? This fairly tests the question, and concludes it against the plaintiff." In other words, the court, in effect, says that this contract is to be construed as though it read: "We agree to have the designated notes renewed and secured, *unless they are paid.*" Such is not the agreement. The defendants have made two specific agreements. One agreement is to have the notes renewed and secured, and the other is to have the notes paid. These two agreements are united by the disjunctive "or," thus indicating an alternative obligation.

The majority of the court have not only misconceived the nature of the agreement, but they seem to have misunderstood the contentions of the parties. Counsel for both parties have disclaimed that this contract is strictly one of guaranty, but plaintiffs claim that the paragraph under consideration constitutes simply a contract on the part of the defendants to procure, or cause one of either two things to be done, one of such things being the payment of money; that by virtue of their selection to sue for a breach of the agreement to have, procure, or cause money to be paid, they are entitled to recover the full amount of the indebtedness which the defendants agreed to have, procure, or cause to be paid. At no time have plaintiffs claimed that the agreement to have the notes paid was strictly a guaranty of payment. The contention of the defendants is that the contract is "intended to be in the nature of an

indemnity against loss," or a "warranty that the makers of the notes have the cash or resources with which to pay them; in short, that they are solvent;" and that respondents are liable only as upon a guaranty of collection; that appellants' right of action for any breach of this agreement, is one for damages only, after exhausting all legal remedies against the makers, or upon alleging and proving that the makers are insolvent and the notes uncollectible; and the lower court so held.

In the majority opinion it is stated that "defendants insist that the construction should be that they will have said paper renewed and secured or paid by the makers." This is not, in any sense, a construction of the contract. It is simply a repetition of the words of the agreement, with the addition of the words, "by the makers," which words would naturally be implied from the context. It may be conceded that this was the agreement that was made, but it does not follow that the legal effect of the words so used and implied is not as contended for by plaintiffs. The majority of the court concede that if this is the agreement, the defendants would be responsible "to the amount of the actual damage any breach of their contract in failing to procure the makers to pay the notes may have caused plaintiffs." This is a correct statement of the rule of damages, but I cannot agree that the damages are to "be measured by the difference between the actual value of the notes and the amount due upon them, together with the necessary expense of endeavoring to enforce payment." If the agreement is strictly, or in effect, a guaranty of collection, the measure of damages would be as stated in the majority opinion. But I am unable to perceive upon what theory this agreement can be construed as a guaranty of collection.

No particular form of expression is a necessary prerequisite to the creation of a contract of guaranty. If the words used evidence an intent on the part of the promisor to answer for the debt of another, the promise constitutes a guaranty, and it may be conditional, or it may be absolute. A guaranty is to be deemed unconditional unless its terms import some condition precedent to the liability of the guarantor. A promise to answer for the debt of another may constitute a guaranty of its collection, or it may constitute a guaranty of its payment. A guaranty of collection imposes upon the guarantee the duty of exhausting his legal remedies against the debtor, or of showing that such legal proceedings would be unavailing, and is therefore termed a conditional

guaranty. We look in vain for any expression in the contract itself, or any facts or circumstances surrounding the transaction, tending in the slightest degree to show that the parties to this agreement intended the particular clause under consideration to constitute a guaranty of collection, or any form of indemnity against loss importing the performance by plaintiffs of any condition precedent to the liability of the defendants. The defendants, Lockwood and Iverson, in agreeing to have the notes renewed and secured or paid, themselves assumed an unconditional obligation to effect through their own efforts, unaided by the plaintiffs, either the renewal or the payment of the notes by the makers. Under the terms of this agreement, no obligation was assumed by, or imposed upon, the plaintiffs to exert any effort to have the notes either renewed and secured or paid; but the obligation to have one or the other of these two things done was assumed by, and imposed upon, the defendants alone. It is easy to conceive of conditions under which an attempt by the plaintiffs to collect the notes by legal process or otherwise might be such an interference with the performance of the obligation assumed by the defendants as to constitute a complete defense to any attempt on the part of the plaintiffs to recover for any breach of the contract by the defendants. In the majority opinion it is stated that "it is unnecessary to speculate as to what should have been contracted for, to determine what has actually been done." I will go a step further, and say that it is not only unnecessary, but it is highly improper. For this reason it is not only unnecessary, but it is improper, to consider whether, in the making of this agreement, usual banking custom had or had not been followed, or what should have been the form of the contract had there been an intent to exact or give as broad a guaranty as one of payment.

Nor is the consideration agreed to be paid by plaintiffs for the eighty shares of stock a proper matter to be considered in determining the meaning of this unambiguous agreement. There is no evidence to show that the contract was an improvident one from the point of view of either party, or that either attempted to, or did, overreach the other. The defendants knew the character of the paper they were selling to the plaintiffs as well as, if not better than, the plaintiffs, and that the extent of the liability assumed by defendants was not as great as it would appear to be from the amount of past-due and demand paper

that was on hand at the date of the contract is evidenced by the fact that at the commencement of this action only about one fourth of the paper had not been renewed or paid. Moreover, from all that appears, the defendants, by guarantying the past-due and demand paper, assumed no greater hazard than that which they escaped by unloading the bank upon the plaintiffs. In other words, the language of the contract itself is to govern its interpretation, and we have no right to indulge in specu- lation, conjectures, or inferences not supported by any record in the case.

The interpretation to be given to the contract under consideration is important only in determining the measure of damages, and it is immaterial whether this agreement is termed a guaranty of payment, or, as urged by the majority opinion, simply a contract by the defend- ants to have the notes paid by the makers. In either case the damages recoverable must be the same in amount. My one personal opinion is that the agreement constitutes substantially a guaranty of payment.

The words, "I hereby guarantee the payment of the within note," constitute a guaranty of payment. Northern State Bank v. Bellamy, 19 N. D. 509, 31 L.R.A.(N.S.) 149, 125 N. W. 188. It is difficult to perceive any difference, in legal effect, between these words, and "I hereby agree to have the within note paid." In either case, the legal effect of the agreement is that the note shall be paid, either voluntarily, or through the procurement of the promisor, by the maker or by some other person in his behalf. "Guaranty is an undertaking by one person that another shall perform his contract or fulfil his obligation, and that in case he does not do so, the guarantor will do it for him. A guarantor of a bill or note is one who engages that the note shall be paid." Ibid. When defendants agreed to have the notes paid, they engaged that the notes "shall be paid." The obligation is even stronger than the ordi- nary guaranty of payment; for defendants have not only engaged that the makers shall pay the notes voluntarily, but they have promised that they will themselves cause the makers to pay.

In the case of Robinson v. Gilman, 43 N. H. 485, the court say: "A brief statement of set-off was, in substance, that in consideration that said Gilman would not bring a suit on two promissory notes due to him from one Rollins, and summon said Robinson as trustee of said Rollins, he would procure said notes to be settled and paid to said

Gilman. . . . Though not in terms a guaranty of the two promissory notes described in the set-off, it was in substance such guaranty,—a contract to procure the notes to be paid. The rule of damages in such a case can only be the amount due on the notes for principal and interest, —an amount to be ascertained by simple computation."

In Wills v. Ross, 77 Ind. 1, 40 Am. Rep. 279, it was held that "Give John a little more time, and I will see you get your money,"— was a guaranty of payment.

In Meldrum v. Kenefick, 15 S. D. 370, 89 N. W. 863, it was held that the statement, "I will see that you get your money," was an original undertaking for the payment of the debt.

In McGowan Commercial Co. v. Midland Coal & Lumber Co. 41 Mont. 211, 108 Pac. 655, it was held that the oral statement, "You let G. have what he requires,—what he needs,—and I will see that it is paid,"—was an original undertaking for the payment of the debt.

Also in Taylor v. Ross, 3 Yerg. 330, the court held the written promise, "We bind ourselves to see the within note paid," to be a guaranty of payment.

Eliminating the provision for the renewal and securing of the notes, the agreement of the respondents is not materially different from those construed in the foregoing cases.

In the writer's opinion, the defendants, upon their failure to effect the renewal or payment of the past-due and demand notes within a reasonable time, became absolutely liable, upon a guaranty of payment, for the full amount due on said notes.

Bruce, J. I concur in the above dissenting opinion.

On Petition for Rehearing (Filed January 7, 1916).

Fisk, Ch. J. In voting to deny appellants' petition I desire to add the following statement of my views: As I construe the contract, it is not a guaranty either of collection or of payment, and in this I fully agree with counsel on both sides. It is rather in the nature of an indemnity to Thorson, who was purchasing stock in the bank, against loss on account of this large amount of past-due or demand bills receivable in the bank, and to this end Iverson and Lockwood agreed with

Thorson to have such bills receivable either renewed and secured, or paid. It amounts, in effect, therefore, to a promise to collect such of these bills receivable as they should fail to get renewed and secured, and, as above stated, the intention was to protect Thorson against loss; and while, perhaps, not strictly an indemnity, it is such in legal effect, and was, I believe, thus intended. I disagree with appellants' counsel only as to the correct measure of damages for the breach of such promise. He contends for the same measure of damages as would obtain if it were an absolute guaranty of payment. This, I think, is unsound. Concededly, the parties did not intend a guaranty of payment, and why should they be held to a liability to be measured the same as under such a guaranty? They did not agree to pay these bills receivable; but merely in effect to collect them from the makers, and, as I view it, their liability is no greater than it would have been if they had guaranteed their collection. I fully agree with respondent's counsel that the true measure of damages for the breach is the same as for a breach of a guaranty of collection.